# Illinois Official Reports

## Appellate Court

---

### *People v. Redmond*, 2018 IL App (1st) 151188

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CARL REDMOND, Defendant-Appellant. |
| District & No. | First District, First Division<br>Docket No. 1-15-1188 |
| Filed | March 12, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-DV-73919; the Hon. Ursula Walowski, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Michael H. Orenstein, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Clare Wesolik Connolly, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE SIMON delivered the judgment of the court, with opinion.<br>Presiding Justice Pierce and Justice Harris concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant Carl Redmond, arrested and charged in a domestic battery case for the third time, argues that his conviction should be overturned because the trial court failed to adequately warn him about proceeding without an attorney. After rejecting the services of at least six attorneys over a 17-month period and after being encouraged by the trial judge a dozen times to accept the services of an attorney, defendant indicated that he wanted to proceed *pro se*. He was tried by a jury, found guilty, and sentenced to 364 days in jail.

¶ 2    Now, defendant argues for the first time that his waiver was not knowing and voluntary because the trial court did not specifically tell him the sentencing range for misdemeanor domestic battery at the time he made his waiver as is called for by the Illinois Supreme Court rule governing waiver of counsel. Defendant also argues that the State made improper comments during trial and committed other misconduct such that he did not receive a fair trial. We affirm.

¶ 3                                    BACKGROUND

¶ 4    Defendant Carl Redmond was arrested and charged with misdemeanor battery based on a complaint from his then-girlfriend, Paris Clark, that she had been abused multiple times during their months-long relationship. Based on Clark's testimony at trial, on one occasion, beginning July 5, 2013, defendant drove up to her while she was near Pullman Park and forced her into his car. He threatened to kill her and forced her to perform oral sex. She bit him, and they began to fight. Defendant elbowed her so hard that she was knocked unconscious until the next morning.

¶ 5    Clark's testimony continued from the time she woke up the next morning. She testified that she and defendant were still in the car. Defendant then drove the two of them to a motel where defendant removed her clothes and had forced sex with her. Afterwards, for three hours, defendant choked her, beat her, and accused her of sleeping with other people. When Clark tried to fight back, defendant took her to the motel room's bathroom and forced her head under water for a minute. Defendant then took all of Clark's clothes and her ID, keys, and cell phone, and he left the motel room indicating that he was going to make her smoke crack cocaine when he returned with it.

¶ 6    Clark testified that when she saw defendant's car pull away, she left the room completely naked and crying. A stranger at the motel gave her a sheet to cover up and offered to let her use his room for a few hours. She accepted the offer, and the stranger left. The stranger returned a few hours later with some clothes for her and drove her to her mother's house. She never told the stranger what had happened nor did she find out the person's identity. Clark's mother took her to the hospital, and someone at the hospital called the police. Clark had a swollen face and bruises all over her arms, legs, and back. She later went to obtain an order of protection and to press charges against defendant. It was not the first time that something like that had happened.

¶ 7    The State presented other crimes evidence consisting of testimony from Clark about other times she was forced to perform sex acts and was physically abused. She testified about a day in March 2013 when defendant choked her and she scratched him in the midst of the attack. Defendant went and got an order of protection against her. She testified that three days later, defendant woke her up to try to have sex with her and accused her of cheating on him. He

choked her, headbutted her, and then took her phone and left. Defendant was aggressive with her again just six days after that, slamming her against a wall and choking her.

¶ 8     Clark also testified about an incident in May 2013 where she and defendant got into a fight. He hit and choked her, and she fought back, scratching him. Defendant called the police, and she was arrested. She was acquitted at trial. Clark testified that in June 2013, defendant attacked her again, and she similarly fled the house naked. The neighbors and, eventually, the police intervened. Clark's daughter testified that she had witnessed the abuse and seen the resulting injuries on her mom during the time her mom was dating defendant.

¶ 9     Defendant was arrested and charged with domestic battery for the incident that happened on July 5, 2013. Defendant indicated at multiple times during the course of pretrial proceedings that he wanted to represent himself. He had a few private attorneys appear on his behalf, but they all withdrew from representation because defendant would not cooperate and did not pay them. Defendant also used multiple assistant public defenders.

¶ 10    The trial judge advised defendant several times during the course of pretrial proceedings about the disadvantages of proceeding *pro se* and that it might be a bad idea for him to represent himself. As far back as the bond hearing, defendant stated that "I understand the seriousness of this charge" and acknowledged that he was aware he was charged with domestic violence and that he had been charged with domestic violence twice before under accusations by previous girlfriends. As pretrial proceedings went on, the trial judge expressed apprehension about letting defendant proceed *pro se* based on some of defendant's filings with the court. The judge advised defendant that he had a right to an attorney and gave defendant several opportunities to consult and retain attorneys, but, after discussing the matter many times, defendant firmly indicated that he was sure that he wanted to represent himself. The trial court stated that "we have been through this before. You understand all the disadvantages of proceeding pro se?" Defendant confirmed that he wanted to represent himself.

¶ 11    The case went to trial, and defendant was convicted by a jury. He was sentenced to 364 days in jail. Defendant, now with counsel, appeals. He argues that the trial court failed to give him the proper admonishments when he waived his right to counsel, such that his waiver cannot be considered knowing and voluntary. He also argues that, even though he was representing himself and did not object to the now-asserted issues, he did not receive a fair trial because the State presented "an inflammatory opening statement and unsupported closing argument."

¶ 12                                    ANALYSIS

¶ 13    Defendant, as he concedes, failed to preserve any of the now-claimed errors for review. He made no objection to the admonishments he received after he requested that his attorney be removed and that he be permitted to represent himself. He made no objection in a posttrial motion, even though he did file a posttrial motion. Accordingly defendant's claims on appeal are forfeited. *People v. Piatkowski*, 225 Ill. 2d 551, 564 (2007) (issues not raised at trial or in a posttrial motion are not preserved for review and are forfeited).

¶ 14    Defendant nonetheless claims he is entitled to relief under the plain error doctrine. Under plain error review, we will grant relief to a defendant on otherwise forfeited issues in either of two circumstances: (1) if the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant or (2) if the error is so serious that it affected the

fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Herron*, 215 Ill. 2d 167, 178-79 (2005).

¶ 15 The plain error doctrine is not a general savings clause preserving all errors affecting substantial rights whether or not they have been brought to the attention of the trial court. *People v. Gray*, 215 Ill. App. 3d 1039, 1050 (1991). Rather, it is a narrow and limited exception to the general waiver rule and its purpose is to protect the rights of the defendant and the integrity and reputation of the judicial process. *Herron*, 215 Ill. 2d at 177. Accordingly, we will review defendant's unpreserved challenge under the plain error doctrine. See *People v. West*, 2017 IL App (1st) 143632, ¶ 11.

¶ 16 Defendant's predominate claim on appeal is that the trial court did not substantially comply with the Illinois Supreme Court rule governing a defendant's waiver of counsel. Illinois Supreme Court Rule 401 (eff. July 1, 1984) provides the requirements that a trial court must follow before accepting a defendant's waiver of counsel.

> "Any waiver of counsel shall be in open court. The court shall not permit a waiver of counsel by a person accused of an offense punishable by imprisonment without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:
>
> > (1) the nature of the charge;
> >
> > (2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and
> >
> > (3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court." Ill. S. Ct. R. 401(a) (eff. July 1, 1984).

¶ 17 The purpose of the waiver of counsel rule is to ensure that a waiver of counsel is knowingly and voluntarily made. *People v. Haynes*, 174 Ill. 2d 204, 241 (1996). Each determination of whether there has been an intelligent waiver of the right to counsel depends on the particular facts and circumstances of the case, including the background, experience, and conduct of the accused. *People v. Baez*, 241 Ill. 2d 44, 116 (2011). Strict, technical compliance with the waiver of counsel rule is not always required. *Haynes*, 174 Ill. 2d at 236. Substantial compliance is sufficient for a valid waiver of counsel if the record indicates that (1) the waiver was made knowingly and voluntarily and (2) the trial court's admonishment did not prejudice the defendant's rights. *Id.* Although the court may consider a defendant's decision to represent himself unwise, a defendant's knowing and intelligent election to represent himself *must* be honored. *Id.* at 235.

¶ 18 Defendant cannot make out a claim for relief on review because the record shows that his waiver was given freely and voluntarily and because he was not prejudiced by any error the trial court made. Defendant's own statements and conduct throughout the pretrial proceedings, trial, and in posttrial proceedings stand in stark contrast to his newfangled and transparent claim that he did not freely and voluntarily waive his right to counsel or that he was prejudiced by not having the technically-proper admonitions.

¶ 19 As early as his bond hearing, defendant indicated that he wanted to represent himself. He then volunteered to the court, expressly against the advice of his appointed attorney, that "I understand the seriousness of this charge." He went on to volunteer that he understood the seriousness because he had been charged with the same domestic violence charge two other

times by girlfriends. Defendant also indicated that he had filed a complaint against Paris Clark for domestic violence against him, acknowledging that he was familiar with what the charge entailed. Soon after the bond hearing, defendant wrote a letter to the then-state's attorney referencing this case and again acknowledging that he knew the nature of the charge, stating that "I was charged with a domestic battery against Paris Clark" and again addressing the pendency of his own claim of domestic battery against Clark.

¶ 20　　As the case moved on, defendant appeared with multiple private attorneys, but they all quickly withdrew because defendant refused to cooperate with them. At one of the many status conferences where defendant stated that he wanted to represent himself, the trial judge asked him, "you know it's not a good idea to represent yourself. Right? *** You're going up against prosecutors that do this every day and who went to law school and know the law and the rules of evidence. *** You should try and hire a lawyer. You had a lawyer at some point here." Defendant insisted that he was not even going to try to hire a lawyer.

¶ 21　　The trial court went on to warn defendant about the potential pitfalls of going to trial without a lawyer. Defendant always indicated that he was aware of what proceeding *pro se* would mean. Defendant cycled through private attorneys and assistant public defenders with the trial court continuing to warn him about the downside of self-representation and encouraging him to accept or hire an attorney, giving him extensions to do so. Even when the judge warned defendant that some of the things he was doing gave the court pause as to whether it was wise for defendant to represent himself and entered a continuance expressly for defendant to consider self-representation, defendant shrugged off the warnings and pressed on not cooperating with attorneys and proclaiming that he wanted to represent himself.

¶ 22　　After being arrested again for violating an order of protection, defendant was still unmoved, stating of his appointed attorney, "He has not [gone] over discovery with me. I don't think a lawyer should represent me." The trial court even made overtures to defendant after he continued to appear at status conferences without an attorney that the court would reappoint one of the assistant public defenders he had rejected even though his bond technically disqualified him from the right to representation by a public defender. All of this went on for 17 months and at least 18 court appearances. Defendant was represented by or consulted with something like nine different attorneys on his case. The trial court offered defendant very generous extensions and gave defendant a dozen opportunities to retain counsel when defendant expressed unhappiness with his own.

¶ 23　　Finally, on January 5, 2015, defendant stated, "Your honor, I have decided, under the circumstances, to proceed myself. *** I have decided to proceed pro se." The trial court responded, "Okay Mr. Redmond. We have been through this before. You understand all the disadvantages of proceeding pro se? Obviously you're not a lawyer." The trial court continued, "You're going against people that have been to law school and know legal procedure and legal rules. You understand all that correct?" Defendant responded, "Yes." The trial court countered, "Okay, but you still want to represent yourself?" Defendant said, "Yes. I have no choice." The trial court reiterated, "Well, you do have a choice, Mr. Redmond. You can hire an attorney or represent yourself, which is what I asked you to decide by today. Is it your choice to represent yourself?" To which defendant replied, "That's the decision." The trial court accepted the decision and set the case for trial.

¶ 24　　Now going back to the requirements under Rule 401(a), compliance with the rule requires that defendant be advised of and understand (1) the nature of the charge; (2) the sentence range,

including the penalty to which the defendant may be subjected due to other convictions; and (3) the right to counsel and to have counsel appointed due to indigency. Ill. S. Ct. R. 401(a) (eff. July 1, 1984). As stated above (*supra* ¶ 19), the record makes clear that defendant knew the nature of the charge against him. Defendant does not argue to the contrary. In addition, defendant was told multiple times, including at the time of making the waiver that he had a right to counsel. When defendant said he had "no choice" other than self-representation, the trial court made clear that there was another choice—having an attorney. The trial court indulged every reasonable opportunity to get defendant representation, and defendant refused. He refused the services of six attorneys that were willing to represent him. So we are only left with paragraph 2 of Rule 401(a)—requiring the trial court to disclose the possible sentencing range.

¶ 25 Defendant argues that his waiver of counsel was ineffective because the trial court did not specifically advise him at the time he made his waiver about the possible penalty that could be imposed. However, we disagree that the absence of a specific admonition on the sentencing range warrants reversal here. Reversal for imperfect admonitions for waiver of counsel is not required when the omission "does not prejudice defendant because either: (1) the absence of a detail from the admonishments did not impede defendant from giving a knowing and intelligent waiver or (2) defendant possessed a degree of knowledge or sophistication that excused the lack of admonition." *People v. Pike*, 2016 IL App (1st) 122626, ¶ 112, *appeal denied*, No. 120864 (Ill. Sept. 27, 2017).

¶ 26 Here, it is clear that defendant knew what he was doing when he decided to represent himself. The trial court's omission does not render his waiver ineffective. Defendant had represented himself before so he knew all the potential pitfalls of doing so. Defendant not only had significant experience with the court system from his earlier first degree murder conviction, he had significant experience with this very charge because it was his third time charged with this very offense. See *People v. Redd*, 173 Ill. 2d 1, 22 (1996) (a defendant's extensive experience with the court system is one indication that he knows what proceeding without counsel means and that the waiver is knowing and voluntary).

¶ 27 Defendant's statements and conduct show that he possessed a high degree of knowledge about the charge against him so that the absence of the technical admonishment did not impede him from giving a knowing and voluntary waiver. Even at trial, in his opening statement, defendant told the jury he was charged with a misdemeanor. He knew what that entailed. He mentioned the misdemeanor nature of the charge at various other points. Defendant volunteered at his sentencing hearing that he knew and had done legal research on the sentencing range. In his motion for a new trial, still unrepresented, defendant advised the court that prosecutors offered him a plea deal before trial, but that he did not accept it because it was for the maximum sentence—one year in prison. So he admits he knew *before trial* that the maximum sentence was a year.

¶ 28 Defendant filed motions to compel discovery, established a comprehensible defense, did some effective cross-examination, and indicated that he had done legal research. He obviously thought he knew better than all of the lawyers he consulted with—he refused to agree with any of them on trial strategy and fired them for it. The trial judge even acknowledged defendant's acumen and praised his conduct in court.

> "I find that you've shown me throughout the year and a half that you have been in my courtroom that you are a smart individual, through everything that you've said. And

even through your attorneys and then at trial, I find that you represented yourself quite well Mr. Redmond. You did a very good job. You know, where it is that you learned it or how you learned it, I don't know. But you've conducted yourself appropriately. You filed motions, you've argued appropriately, you've represented yourself appropriately."

¶ 29 All of the foregoing shows that defendant's waiver of counsel was knowing and voluntary. The trial court's failure to specifically advise defendant of the possible sentencing range at the time he waived his right to counsel did not influence his decision to waive counsel. Defendant knew what he was doing and the ramifications. His argument, raised for the first time on appeal, seizing on the trial court's technical error is insufficient to entitle him to relief. A defendant's knowing and voluntary election to represent himself must be honored. *Haynes*, 174 Ill. 2d at 235. On these facts, it is clear that defendant's waiver was knowing and voluntary and the error did not prejudice his rights.

¶ 30 Defendant also argues that the State improperly inflamed the jury through an argumentative opening and by using his trial strategy against him. These contentions are also forfeited because defendant did not object at trial nor did he include them in a posttrial motion. See *Piatkowski*, 225 Ill. 2d at 564. We, accordingly, review for plain error. While the State has wide latitude in making opening statements and closing arguments and is entitled to comment on the evidence, comments intending only to arouse the prejudice and passion of the jury are improper. *People v. Herndon*, 2015 IL App (1st) 123375, ¶ 36.

¶ 31 Defendant posits that it was plain error for the State to say multiple times in its opening statement that defendant was "torturing" Paris Clark and that she was living a "nightmare." Defendant argues that the statements crossed the line into becoming argument and that they had the purpose of inflaming the jurors' passions. However, after reviewing the transcript of the opening statement, it is apparent that none of the comments were out of bounds. The State used some vivid imagery, but it was only to reference what it believed the evidence at trial would show. Clark, in fact, testified that she was "tortured." If believed, her experiences can be fairly characterized as a nightmare. There was nothing improper about the State's opening statement. It was merely the State's characterization of the evidence that it believed would follow—testimony from Clark about multiple acts of violence and sexual violence inflicted on her.

¶ 32 Defendant also argues that it was plain error for the State to conduct "a mini-trial of uncharged acts, painting Redmond as a repeat rapist." However, the uncharged acts defendant alludes to were introduced as other crimes evidence. The comments made by the State were supported by Clark's testimony. Defendant never objected, and he had the opportunity to counter everything said by the State. The State did not spend an inordinate amount of time commenting on the uncharged acts so as to bias defendant in a way that he did not receive a fair trial.

¶ 33 Defendant maintains that it was plain error for the State to argue matters that he claims were unsupported by evidence and by using defendant's trial strategy against him. The State referenced "hundreds of reports" that Clark had made against defendant, when in fact the police officer testified that Clark had made out "several police reports naming [defendant] as an offender." It is true that the testimony did not match the State's proffered description, but the exaggeration does not constitute plain error. See *People v. Banks*, 237 Ill. 2d 154, 183

(2010) ("The wide latitude extended to prosecutors during their closing remarks has been held to include some degree of both sarcasm and invective to express their points.").

¶ 34 Defendant also complains that the State acted improperly when it declared that

> "the State called four witnesses yesterday, but I submit to you that there was really a fifth witness for the State, Carl Redmond. Through his arrogance, through his complete abuser personality and his cross-examination of Paris Clark who he continued to victimize while he cross-examined her. Carl Redmond was just another witness for the State really."

Defendant never objected and he had the opportunity to counter everything said by the State. In light of the entire record, this statement is not sufficiently prejudicial to be considered so serious that it affected the fairness of the trial or challenged the integrity of the judicial process. The record demonstrates that defendant had a fair trial, but that the jury credited some part of Clark's testimony despite defendant's efforts to convince them not to. Finding no plain error, the jury's verdict must stand.

¶ 35                                                    CONCLUSION
¶ 36 Accordingly, we affirm.

¶ 37 Affirmed.