2020 IL App (1st) 162564-U

FOURTH DIVISION
July 16, 2020

No. 1-16-2564

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE APPELLATE COURT
OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 14 CR 12784 |
| ANTONIO SMITH, | ) ) | |
| Defendant-Appellant. | ) ) ) ) | Honorable Arthur F. Hill, Jr., Judge Presiding. |

_____

JUSTICE REYES delivered the judgment of the court.
Presiding Justice Gordon and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Affirming the judgment of the circuit court of Cook County where the trial court's admonishments regarding the defendant's waiver of counsel substantially complied with Illinois Supreme Court Rule 401(a).

¶ 2    Defendant Antonio Smith was convicted of harassment by electronic communication after a bench trial and sentenced to 5-1/2 years in prison.  In this direct appeal, defendant contends he is entitled to a new trial because the trial court failed to properly admonish him under Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) when he waived counsel and

subsequently relied on that improper admonishment when he waived counsel for a second time. For the reasons discussed herein, we affirm the judgment of the circuit court.

¶ 3                                    BACKGROUND

¶ 4     Defendant was formerly engaged in dating relationship with Nisha Pravinchandra (Nisha).  On March 12, 2014, Nisha's mother JoCarol Dave (JoCarol) was granted an emergency stalking no contact order against defendant; the protected parties included JoCarol, Nisha, and Nisha's minor son.  Defendant subsequently pled guilty to two misdemeanor counts of violating the order, based on text messages he sent to Nisha on March 15, 2014, and his interactions with JoCarol on March 18, 2014.  He was sentenced to 30 days in jail on April 7, 2014.  On the same date, Nisha was granted an emergency order of protection, which covered her and her son.

¶ 5     On June 12, 2014, defendant was indicted in case number 14 CR 9256 on two counts of aggravated stalking, two counts of stalking, two counts of cyberstalking, and one count of harassment by electronic communication.  The aggravated stalking charges related to the period from March 15 to March 21, 2014; the other charges related to the period from February 15 to March 21, 2014.

¶ 6     During his arraignment on June 20, 2014, the trial court informed defendant he was charged "by way of a multiple count indictment with aggravated stalking" and that the "leading charge" was a Class 3 felony.  Responding to the court's question, defendant stated that he did not have money to retain his own attorney.  Defendant subsequently indicated that he did not want to be represented by the public defender because he knew his own case "in and out."

¶ 7     The trial court then stated that defendant was charged with, among other things, aggravated stalking "on or about" March 15, 2014, which was a Class 3 felony.  The court explained that the potential penalties included fines of up to $25,000 and his extended term

sentence could range from a minimum of five years to a maximum of ten years in the penitentiary. The court informed defendant that his right to be represented by an attorney is guaranteed by law, and if defendant could not afford to hire an attorney, the court would appoint one free of cost. As to each point, the court expressly confirmed defendant's understanding of the charges being brought against him and his rights.

¶ 8    After detailing "the kind of things a lawyer would do," the court asked defendant's age (29 years old) and his educational background (dental assistance training, plus "a couple of college credits in criminal justice"). The trial court then allowed defendant to proceed *pro se*. Later in the same hearing, the court tendered a copy of the indictment to defendant, noting "it lists all the charges that are pending against you right now." Defendant responded, "How many charges do I have? I am under the assumption I only have one." The court replied, "Well, there are several counts, a total of seven, I believe. You can take a look at it. You will see." Defendant responded, "Thank you, sir, yes, sir."

¶ 9    At the next hearing on July 16, 2014, after the court denied his request for a court order regarding his use of the jail law library, defendant indicated he wished to "withdraw" his right to represent himself. The trial court appointed the public defender as his attorney.

¶ 10    On July 25, 2014, defendant was re-indicted under case number 14 CR 12784,[1] and the court appointed the public defender as his counsel. Defendant was charged with six counts of aggravated stalking, six counts of stalking, two counts of cyberstalking, and one count of harassment by electronic communication. The aggravated stalking counts related to the period from March 15 to March 21, 2014; the other counts related to the period from February 15 to March 14, 2014, or from February 15 to March 21, 2014.

¶ 11    During a hearing on November 5, 2015, defendant referenced a "conflict of interest" with

---

[1] The State subsequently nol-prossed case number 14 CR 9256.

his attorney and requested to represent himself. Defendant asked to file a motion to proceed *pro se*, a motion seeking additional discovery, and a writ of *habeas corpus* with a supporting memorandum. Defendant detailed his concerns regarding his attorney's representation; his attorney responded to defendant's contentions and noted that defendant previously represented himself. The court confirmed that defendant remembered his previous request to proceed *pro se*. The court stated, in part: "I've admonished you about this before and the serious nature of these charges, and the serious penalties that will come your way if you were found guilty." Defendant responded that he recalled the prior admonishments. After denying defendant's "alternative" request for assistance of another counsel, the court again confirmed that defendant wanted to represent himself.

¶ 12    At the court's direction, the assistant State's attorney (ASA) explained that "[t]he highest class that he is facing in this case is a Class 3" and the potential penalties included a maximum of ten years in prison. The ASA further stated: "I believe we had a 402 conference on this case already where I did make that request the maximum condition term of up to ten years IDOC, and again the MSR period for offenses of aggravated stalking is four years." The court clarified that defendant "is extendible on the Class 3" and confirmed that defendant understood that his prison sentence "could be as high as ten years." The court questioned defendant regarding his educational background and cautioned defendant that he would not be allowed "to use this as a game." Noting that defendant had been re-admonished, the court permitted the public defender to withdraw. During the same hearing, defendant filed his *pro se* writ of *habeas corpus*, wherein he listed the seven charges in the original indictment and the fifteen charges in the re-indictment.

¶ 13    Prior to the commencement of the bench trial, the State elected to proceed on two aggravated stalking counts (counts 1 and 2), one cyberstalking count (count 14), and the

harassment by electronic communication count (count 15). The State's witnesses at trial were JoCarol, Nisha, and a Cook County Sheriff's Department deputy, who testified that he had served an emergency stalking no contact order on defendant on March 14, 2014. JoCarol testified that, after Nisha and defendant ended their relationship, defendant repeatedly called JoCarol and left items on the porch of her home, where Nisha also resided. According to JoCarol, defendant "made a scene" outside of her home on March 11, 2014, threatening "to shoot everyone on the porch." She filed a police report and obtained an order of protection; she subsequently signed misdemeanor complaints after defendant violated the order of protection.

¶ 14    Nisha testified, in part, that she ended her relationship with defendant in February 2014 and informed him she "needed some space." According to Nisha, defendant called her, her son, and her mother "to the point where we had to turn the house phone off." At around the time of defendant's shooting threat on March 11, 2014, Nisha changed her cellular telephone number as well.

¶ 15    Nisha further testified that defendant sent her many emails from multiple email addresses, which caused her to feel "very scared" and "distraught." Certain of the emails included private photographs; other emails contained screenshots and videos. An email sent on February 26, 2014, included: "I'll kill your life, bitch." She testified that defendant had dropped off fifteen greeting cards, liquor, and balloons on her porch on March 18, 2014.

¶ 16    On cross-examination, defendant questioned Nisha regarding the frequency and length of her calls to him during February and March 2014. She admitted that she had threatened to inform defendant's employer regarding his criminal background. Nisha testified that she made certain disturbing and incendiary comments regarding defendant's minor children because she was "feeling very scared" and "wanted this to stop." Nisha also testified that she told defendant

she had sexual relations with his best friend.

¶ 17     The State's exhibits – *e.g.,* emails and related records from Yahoo Incorporated – were admitted without objection, and the State rested.  Defendant called Chicago Police Officer Eugene Goldsmith, who testified that he had responded to an OEC (Emergency Management and Communication Center) call on April 7, 2014, and had completed a case report based on electronic communication between defendant and Nisha between February 15, 2014 and March 21, 2014.  Defendant read into the record a stipulation reached with the ASA regarding the admission of telephone records, complaints, emails, screenshots, and other documents.  The court also admitted certain hearing transcripts over the State's objection.  After inquiring regarding the potential use of his prior convictions for telephone harassment, forgery, and possession of a stolen motor vehicle, defendant declined to testify and rested.

¶ 18     At the continued trial date, the ASA indicated that the State could not sustain its burden as to the aggravated stalking, cyberstalking, and stalking counts based on the recent decision in *People v. Relerford*, 2016 IL App (1st) 132531, which held that portions of the stalking and cyberstalking statutes lacked a *mens rea* requirement and were thus facially unconstitutional. The State solely proceeded on the remaining harassment by electronic communication count, which had a maximum extendible sentence of six years.  After rejecting the State's offer of a five-year sentence, defendant advanced various arguments during his closing argument, *e.g.*, that Nisha did not experience fear and emotional distress and that the current proceedings violated double jeopardy principles because he had previously served a 30-day jail sentence for the same conduct.  The ASA argued, in part, that defendant had made direct threats in emails to Nisha.

¶ 19     The trial court found defendant guilty of harassment by electronic communication and denied defendant's motion to reconsider.  The court sentenced defendant to 5-1/2 years in prison

and granted the State's petition for an order of protection for Nisha, JoCarol, and Nisha's son. Defendant is represented by the Office of the State Appellate Defender in this timely appeal.

¶ 20                                    ANALYSIS

¶ 21    Defendant contends he is entitled to a new trial where the trial court (i) failed to properly admonish him under Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) when he first waived counsel during his arraignment and (ii) relied on that improper admonishment when defendant waived counsel for a second time and failed to advise him of the nature of the charges being brought against him and his right to counsel. The State argues that the trial court substantially complied with Rule 401(a) and that defendant knowingly and voluntarily waived his right to counsel.

¶ 22    We first note that defendant failed to raise the alleged error by contemporaneous objection or in a posttrial motion, thus forfeiting the issue. *People v. Denson*, 2014 IL 116231, ¶ 18; *People v. Redmond*, 2018 IL App (1st) 151188, ¶ 13. The plain-error doctrine allows a reviewing court to consider an unpreserved error (1) when a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) when a clear or obvious error occurred and the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Coats*, 2018 IL 121926, ¶ 9. Illinois courts have held that "[b]ecause the right to counsel is fundamental, we may review a failure to substantially comply with Rule 401(a) under the plain-error doctrine despite a defendant's failure to properly preserve such an error." *People v. Pike*, 2016 IL App (1st) 122626, ¶ 109. See also *Redmond*, 2018 IL App (1st) 151188, ¶ 15; *People v. Jiles*, 364 Ill. App. 3d 320, 328 (2006). Therefore, the first step is to determine

whether an error occurred. *Pike*, 2016 IL App (1st) 122626, ¶ 109.

¶ 23    The right to counsel is "enshrined in both the United States constitution and the Illinois constitution." *People v. Black*, 2011 IL App (5th) 080089, ¶ 11.  See U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8.  Illinois courts have also long recognized that a defendant's right to self-representation is as basic and fundamental as the right to be represented by counsel. *People v. Wright*, 2017 IL 119561, ¶ 39; *Jiles*, 364 Ill. App. 3d at 328.

¶ 24    Illinois Supreme Court Rule 401 guides the procedure for waiver of counsel.  The rule provides, in pertinent part, as follows:

> "(a) Waiver of Counsel.  Any waiver of counsel shall be in open court.  The court shall not permit a waiver of counsel by a person accused of an offense punishable by imprisonment without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:
>
> (1) the nature of the charge;
>
> (2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and
>
> (3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court."  Ill. S. Ct. R. 401 (eff. July 1, 1984).

The purpose of Rule 401(a) is to ensure that a waiver of counsel is knowingly and intelligently made. *People v. Campbell*, 224 Ill. 2d 80, 84 (2006).  See also *Black*, 2011 IL App (5th) 080089, ¶ 11 (noting that "[t]he gravity of a waiver requires a trial court to fully inform a defendant of both the nature of the right being abandoned and the consequences of the decision").  "Each determination of whether there has been an intelligent waiver of the right to

counsel depends on the particular facts and circumstances of the case, including the background, experience, and conduct of the accused." *Redmond*, 2018 IL App (1st) 151188, ¶ 17.

¶ 25    Illinois courts have "declined to enforce a formalistic approach to the substantive requirements outlined" in Rule 401(a). *Black*, 2011 IL App (5th) 080089, ¶ 13. Accord *Jiles*, 364 Ill. App. 3d at 329 (stating "strict, technical compliance with Rule 401(a) is not always required"); *People v. Herndon*, 2015 IL App (1st) 123375, ¶ 26 (same). Substantial compliance with Rule 401(a) is, however, required for an effective waiver of counsel. *Campbell*, 224 Ill. 2d at 84.

¶ 26    "Substantial compliance is sufficient for a valid waiver of counsel if the record indicates that (1) the waiver was made knowingly and voluntarily and (2) the trial court's admonishment did not prejudice the defendant's rights." *Redmond*, 2018 IL App (1st) 151188, ¶ 17; *People v. Phillips*, 392 Ill. App. 3d 243, 262 (2009). See also *Black*, 2011 IL App (5th) 080089, ¶ 20 (noting that "an otherwise inadequate admonition may be constitutionally sufficient if the absence of a detail did not impede the defendant from giving a knowing and voluntary waiver"). "While a finding whether a defendant's waiver of counsel was knowing and voluntary is reviewed for an abuse of discretion, the legal issue of whether the court failed to substantially comply with Supreme Court Rule 401(a) admonishments is a question of law that we review *de novo*." (Internal citations omitted.) *Pike*, 2016 IL App (1st) 122626, ¶ 114.

¶ 27    During his arraignment on June 20, 2014, the trial court expressly informed defendant that he had a right to counsel and, since he was indigent, to have counsel appointed for him. See Ill. S. Ct. R. 401(a)(3) (eff. July 1, 1984). The trial court also admonished defendant regarding the minimum and maximum penalties prescribed by law. See Ill. S. Ct. R. 401(a)(2) (eff. July 1, 1984). Defendant argues, however, the trial court failed to properly inform him of the nature of

the charges against him. See Ill. S. Ct. R. 401(a)(1) (eff. July 1, 1984). According to defendant, the trial court only admonished him regarding one of the aggravated stalking counts, and the court told him that it was based on alleged acts on or about March 15, 2014. Defendant also notes that the court only asked if he understood the "charge," not the "charges."

¶ 28    Based on our review of the complete transcript, we reject defendant's suggestion that the use of the singular word "charge" was misleading. The court had previously informed defendant during the same hearing that "you are charged by way of a *multiple count* indictment with aggravated stalking," that the "*leading charge* is a Class 3 felony," and that "the allegations are that you committed, *among other things*, the offense of aggravated stalking." (Emphases added). Simply put, the court repeatedly indicated that there were multiple counts pending against defendant. Rule 401(a) does not require the trial court to recite all of the counts when admonishing the defendant. *Pike*, 2016 IL App (1st) 122626, ¶ 2.

¶ 29    In any event, after defendant told the trial court that he "was under the assumption" that there was only one pending count, the court provided a copy of the indictment to defendant and indicated there were seven counts. While we acknowledge that defendant was proceeding *pro se* at that point, we find that defendant's rights were not prejudiced. See *People v. Toy*, 407 Ill. App. 3d 272, 283 (2011) (finding substantial compliance with Rule 401(a) where the trial court, among other things, provided documents to the defendant informing him of the pending charges). See also *Wright*, 2017 IL 119561, ¶ 54 (noting that each case "must be evaluated on its own particular set of facts"). Although defendant submitted a *pro se* motion to dismiss during the arraignment, his motion was not heard until the next hearing on July 16, 2014, at which time defendant was unequivocally aware of each of the charges against him and the associated time frames of the alleged conduct. By the conclusion of the July 16 hearing, defendant elected to

proceed with counsel after the court denied his request for an order regarding use of the law library. Under the circumstances herein, we find defendant's initial waiver was made knowingly and voluntarily, and the court's admonishment did not prejudice his rights. See *Redmond*, 2018 IL App (1st) 151188, ¶ 17.

¶ 30 Defendant also contends that the trial court failed to substantially comply with Rule 401(a) on November 5, 2015, when he requested to represent himself for the second time. The "continuing waiver" rule provides that "absent significantly changed circumstances or a later request for counsel, an intelligently and knowingly made waiver of counsel applies to all phases of trial." *People v. Simpson*, 172 Ill. 2d 117, 138 (1996). Since defendant requested and received counsel after his initial waiver in 2014, the trial court was required to re-admonish him upon his second request to waive counsel. See *Pike*, 2016 IL App (1st) 122626, ¶ 116. While the trial court informed defendant of the minimum and maximum penalties (Ill. S. Ct. R. 401(a)(2) (eff. July 1, 1984)), defendant contends that the court otherwise relied on the prior admonishments provided seventeen months earlier as to his constitutional right to be represented by counsel (Ill. S. Ct. R. 401(a)(3) (eff. July 1, 1984)) and the nature of the charges against him (Ill. S. Ct. R. 401(a)(1) (eff. July 1, 1984)).

¶ 31 Until the November 5, 2015 hearing, defendant was represented by appointed counsel. He thus knew that he "had a right both to counsel in general and to appointed counsel due to being indigent." *Phillips*, 392 Ill. App. 3d at 264. Under these circumstances, defendant was not prejudiced by any failure to expressly admonish him regarding this right.

¶ 32 We are similarly unpersuaded by defendant's challenge based on the court's alleged failure to expressly inform defendant of the nature of the charges during the November 5, 2015 hearing. A "practical and realistic reading of the entire record" (*People v. Nunn*, 29 Ill. App. 3d

399, 404 (1975)) demonstrates that defendant was aware of the nature of the charges at that time. See also *Pike*, 2016 IL App (1st) 122626, ¶ 118 (examining the entire record to determine whether the re-admonishment substantially complied with Rule 401(a)); *Simpson*, 172 Ill. 2d at 133 (noting that "[t]he entire record should be considered in determining whether the waiver was knowingly and understandingly made"). Prior to the court's admonitions during the November 5 hearing, defendant stated that he wished to file various documents, including his *pro se* writ of *habeas corpus*, wherein defendant listed the seven counts in case number 14 CR 9256 and the fifteen counts in case number 14 CR 12784. The filing of defendant's *pro se* motion during the hearing wherein he had been admonished plainly evidenced his understanding of the charges.

¶ 33    Illinois courts have also recognized another category of substantial compliance with Rule 401(a), *i.e.*, where the defendant may be viewed as possessing a degree of knowledge or sophistication would excuse any lack of admonition. *Black*, 2011 IL App (5th) 080089, ¶ 20. See also *Redmond*, 2018 IL App (1st) 151188, ¶ 25. Defendant has extensive experience with the court system. See *Phillips*, 392 Ill. App. 3d at 264. The presentence investigation report listed his prior convictions, including convictions for telephone harassment, forgery, and possession of a stolen motor vehicle. We further observe that defendant's conduct of his defense demonstrated his detailed knowledge of the legal proceedings relating to his conduct vis-à-vis Nisha. *People v. Jackson*, 59 Ill. App. 3d 1004, 1009 (1978) (stating that the defendant's "conduct of the defense demonstrated his intricate knowledge of court proceedings and his familiarity with court records"). Defendant filed properly formatted motions wherein he cited appropriate legal authority, engaged in certain effective cross-examination of Nisha, and otherwise presented a comprehensible (albeit unsuccessful) defense. *E.g.*, *People v. Maxey*, 2018 IL App (1st) 130698-B, ¶ 52; *Simpson*, 172 Ill. 2d at 134.

¶ 34    Under the circumstances herein, we conclude that the trial court substantially complied with Rule 401(a), and defendant made a voluntary, knowing, and intelligent waiver of counsel. See *Pike*, 2016 IL App (1st) 122626, ¶ 112 (noting that "[w]hen a defendant is admonished in substantial compliance with Rule 401(a), there is a valid waiver of counsel").  Because we find no error, there is no plain error.  *Coats*, 2018 IL 121926, ¶ 32; *Maxey*, 2018 IL App (1st) 130698-B, ¶ 82.

¶ 35                                CONCLUSION

¶ 36    For the reasons stated above, defendant's request for new trial is denied, and his conviction and sentence are affirmed.

¶ 37    Affirmed.