**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 180472-U

Order filed December 7, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0472 Circuit No. 16-CF-62 |
| GLENN D. HODGES, | ) ) ) | Honorable Kathy Bradshaw-Elliott, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE McDADE delivered the judgment of the court.
Presiding Justice Lytton and Justice Carter concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:   The circuit court substantially complied with Illinois Supreme Court Rule 401(a). The prosecutor's statements in closing and rebuttal arguments were not error.

¶ 2     Defendant, Glenn D. Hodges, appeals from his conviction for unlawful possession of a stolen motor vehicle. Defendant argues: (1) the Kankakee County circuit court failed to comply with Illinois Supreme Court Rule 401(a) when he waived his right to counsel, and (2) the State's closing and rebuttal arguments improperly shifted the burden of proof to defendant. We affirm.

¶ 3                                   I. BACKGROUND

¶ 4          The State charged defendant with unlawful possession of a stolen motor vehicle (625

ILCS 5/4-103(a)(1) (West 2014)). During the February 5, 2016, bond setting hearing, the

following colloquy occurred:

            "[THE COURT]: Can you afford your own attorney?

            THE DEFENDANT: No

            THE COURT: *** The PD is appointed."

¶ 5          On February 26, 2018, more than two years after the court appointed counsel to represent

defendant, defendant told the court that he wanted to "fire[ ]" his attorney because counsel tried

to force him to plead guilty. Defendant also refused to meet with counsel. Given defendant's

statement and refusal to meet with his attorney, the court ordered defendant to undergo a fitness

evaluation. On the following date, the court found defendant fit to stand trial, and the matter was

continued again for defense counsel to meet with defendant prior to trial.

¶ 6          On April 20, 2018, defense counsel told the court, "Judge it's my understanding that he

would rather defend himself than have me represent him." The court then addressed defendant:

            "[THE COURT]: I'm going to go through everything with you. Okay? Okay.

                  All right. The first thing I have to tell you is what the minimum and

            maximum could be of this case under the law and you are charged with—with

            unlawful possession of [a] stolen vehicle, which is a Class 2, but you are a

            mandatory Class X sentencing that we have gone through before.

                  So the possible sentence is anywhere from six to 30 years. ***

                                          * * *

THE COURT: *** I'm going to start reading you this piece of paper and if you want to represent yourself, you're going to have to sign it and agree to this.

First of all, I, Glenn Hodges, have requested that I be allowed to act as my own attorney herein. The Court has explained the following to me:

1, I will be required to follow the various technical rules of procedure.

* * *

2, an attorney has had substantial experience and training in trial procedures. The State will be represented by an experienced attorney.

* * *

THE COURT: *** [3] As a result of my inexperience and lack of training, I may fail to object to inadmissible evidence, may not make effective use of my trial rights and may make tactical decisions, which have unintended consequences.

* * *

[THE COURT]: [4] I will not be allowed to complain on appeal about [the] incompetence of my attorney. ***

* * *

[THE COURT]: 5, the effectiveness of my defense may be diminished by my dual role as attorney and accused.

***

6, because you're in custody I'll be given no special consideration.

***

3

7, I will receive no extra time for preparation and since I am incarcerated, will not have access to the law library. You will only have access to what's under the Jail Act. ***

8, an attorney could provide assistance by determining whether defenses exist by consulting with the prosecutor regarding possible reduced charges or lesser sentence and in the event of a conviction by presenting mitigating evidence. ***

9, once I begin the trial myself, I will not be allowed to change my mind during trial. ***

And 10, under the Court's discretion no stand-by counsel will be appointed."

The language at the bottom of the waiver of counsel form, which the court did not read, stated, "I understand all of the above as well as my right to have counsel appointed to represent me without charge if I am too poor to hire an attorney. I persist in my request to represent myself and give up my right to be represented by an attorney." Defendant signed the waiver and submitted it to the court. The court set the matter for a jury trial.

¶ 7 On May 21, 2018, the court called the case for a jury trial. Gary Engelman testified that he owned a tan 2003 Honda Accord. He last saw this vehicle parked in his driveway on February 2, 2016, at approximately 8:30 p.m. Around 6:30 the following morning, Gary observed the vehicle missing from his driveway, and he contacted the police. Gary's daughter, Mackenzie Engelman, was the only other person permitted to drive that vehicle. Mackenzie told Gary that

4

she had left the keys inside the vehicle the night before. Further, Gary stated that he did not know defendant.

¶ 8    Mackenzie testified that she resided with her parents on February 2, 2016. That afternoon, she drove a gold Honda Accord, and parked it in the driveway. The following morning, Gary told her that the vehicle was no longer parked in the driveway. She did not give anyone permission to drive the vehicle and she did not know defendant. On February 4, 2016, Mackenzie saw her stolen vehicle at a bank and reported it to the police.

¶ 9    Detective Sergeant Kraig Horstmann testified that on February 4, 2016, he received a report of a stolen vehicle described as a gold Honda Accord. Shortly afterward, Horstmann observed a vehicle that matched the description given. As the vehicle passed him, Horstmann made eye contact with defendant who was driving the vehicle. Horstmann attempted to effectuate a stop on the vehicle. Defendant did not pull over when Horstmann activated his lights. Instead, defendant accelerated and changed lanes. Defendant drove the vehicle into a parking lot and then into a grass field. When the vehicle came to a stop, defendant exited and fled on foot. The passenger of the vehicle, Keavia Johnson, identified defendant as the driver. The events testified to were captured on video and played for the jury. On cross-examination, Horstmann testified that Johnson did not tell him that defendant stole the vehicle.

¶ 10    Sergeant Trent Bukowski testified that on February 4, 2016, he heard on the police radio that another officer was following a reported stolen vehicle. Bukowski learned that defendant had run from the vehicle. When Bukowski located defendant, defendant identified himself as Leroy Hodges and was unable to give his address. Bukowski observed on defendant's wrist a medical bracelet with the name Glenn D. Hodges.

¶ 11       Johnson testified that on February 4, 2016, she planned to attend an event in another town with her aunt. Johnson stated that, although defendant was her brother, she had only met him for the first time the day before the event. Before Johnson left for the event, defendant arrived at the residence she shared with her aunt and offered to give them a ride. Defendant told Johnson that he was using his girlfriend's vehicle. She stated that defendant dropped her aunt off at a credit union, and she and defendant went to get gas. Along the way, she observed a police officer begin to follow their vehicle. Johnson stated that defendant said to her, "get ready to jump this mother." She said defendant then drove into a field and fled on foot. Johnson testified that she did not know the vehicle was stolen. On cross-examination, Johnson denied possessing contraband on the date of the incident.

¶ 12       Defendant testified that a man came to his residence to sell a gold Honda to him for $1500. Defendant agreed to buy the vehicle for his girlfriend. The man allowed defendant to test drive the vehicle. While on the test drive, defendant visited his aunt and sister and offered to give them a ride. Defendant planned to give $1500 to the man when he returned. While driving, he noticed a police officer following the vehicle. Defendant saw the officer turn on his lights, but he decided to keep driving so that his sister could get rid of the marijuana that she possessed. Defendant planned to drive through the field and flee on foot to distract the officers while his sister concealed the marijuana. On cross-examination, defendant testified that he did not know he was driving a stolen vehicle.

¶ 13       After the close of evidence, the State argued, "The defendant's story doesn't add up. There is no evidence of the defendant's story." Later in rebuttal, the State said, "Now, where is this mystery person selling the gold Honda? I don't see anybody. I don't see a girlfriend who was getting the Honda bought for her."

6

¶ 14 In defendant's closing, he argued that the public defender who had represented him before "was going to help the State get a conviction." He stated that he had to "fire him" and represent himself because of this.

¶ 15 The court instructed the jury that the closing arguments were not evidence, and the jury should disregard any statement made by the parties that was not based on the evidence. The jury found defendant guilty of unlawful possession of a stolen motor vehicle.

¶ 16 At the sentencing hearing, the State introduced into evidence defendant's presentence investigation report (PSI). The PSI showed defendant's prior criminal history included four convictions for possession of a stolen motor vehicle and several other felony convictions. The court sentenced defendant to 10 years' imprisonment. Defendant appeals.

¶ 17                                                II. ANALYSIS

¶ 18 Defendant first argues that we should reverse his conviction due to the circuit court's failure to comply with Illinois Supreme Court Rule 401(a) before he waived his right to counsel. Second, defendant argues that the comments in the State's closing and rebuttal arguments improperly shifted the burden of proof.

¶ 19 At the outset, we note that defendant forfeited review of these issues by failing to object at trial. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Defendant acknowledges this forfeiture and asks that we review the issues for plain error. Defendant argues that his claims are reversible under either the first or second prong of the plain error analysis. The plain error doctrine permits a reviewing court to remedy a "clear or obvious error" when: (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) "that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of

7

the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). The first step of the plain error analysis is to determine whether an error occurred. *People v. Eppinger*, 2013 IL 114121, ¶ 19.

¶ 20                                    A. Waiver of Counsel

¶ 21        Defendant argues the court did not substantially comply with Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) before he waived his right to counsel and proceeded to trial. Before a defendant can make a knowing and intelligent waiver of his right to counsel, a court must admonish him in accordance with Rule 401(a). *People v. Campbell*, 224 Ill. 2d 80, 87 (2006). Rule 401(a) provides:

> "Any waiver of counsel shall be in open court. The court shall not permit a waiver of counsel by a person accused of an offense punishable by imprisonment without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:
>
> (1) the nature of the charge;
>
> (2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and
>
> (3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court." Ill. S. Ct. R. 401(a) (eff. July 1, 1984).

¶ 22        The Illinois Supreme court has held that strict compliance with Rule 401(a) is not always required to effectuate a valid waiver of counsel. *People v. Haynes*, 174 Ill. 2d 204, 236 (1996). "[S]ubstantial compliance will be sufficient to effectuate a valid waiver if the record indicates that the waiver was made knowingly and voluntarily, and the admonishment the defendant

8

received did not prejudice his rights." *Id.* "Substantial compliance means a deficiency in the admonishments does not prejudice the defendant, either because the defendant already knows of the omitted information or because the defendant's degree of legal sophistication makes evident his or her awareness of the omitted information." *People v. Moore*, 2014 IL App (1st) 112592-B, ¶ 38. "Each determination of whether there has been an intelligent waiver of the right to counsel depends on the particular facts and circumstances of the case, including the background, experience, and conduct of the accused." *People v. Redmond*, 2018 IL App (1st) 151188, ¶ 17. "No one admonition is either more or less important ***." *People v. Johnson*, 123 Ill. App. 3d 128, 131 (1984). We review the court's compliance with Rule 401(a) *de novo*. *Campbell*, 224 Ill. 2d at 84.

¶ 23   In the present case, it is clear from the record that the court did not strictly comply with Rule 401(a), and therefore, its admonishment was deficient. Before defendant waived his right to counsel and proceeded to trial as a self-represented litigant, the court admonished him of: (1) the nature of the charge against him, and (2) the minimum and maximum sentence. The court did not admonish defendant of the third requirement of Rule 401(a): defendant's right to counsel, or if indigent, appointed counsel. Despite this omission, the facts and circumstances surrounding defendant's waiver establish that defendant made a knowing and intelligent waiver of his right to counsel, and the court substantially complied with the rule.

¶ 24   First, the record establishes that defendant was aware of his right to counsel or appointed counsel. On defendant's first court date, the court asked him "Can you afford your own attorney?" To which defendant responded that he could not. From that point forward the public defender represented defendant. One month before defendant's jury trial, while he was still represented by appointed counsel, defendant elected to represent himself. Due to appointed

counsel's two years of continuous representation, defendant knew of his right to counsel and appointed counsel.

¶ 25    Second, defendant possessed a degree of knowledge or sophistication that excused the partial lack of admonition. See *Redmond*, 2018 IL App (1st) 151188, ¶ 26 (defendant's significant experience with the court system, specifically, defendant's three prior charges for the same offense, established that defendant made a knowing waiver of his right to counsel); *People v. Phillips*, 392 Ill. App. 3d 243, 264 (2009) (circuit court substantially complied with Rule 401(a) where defendant's prior criminal history indicated that he made a knowing waiver of his right to counsel). Here, defendant had an extensive history. His PSI showed that he had been charged and convicted of the same offense of possession of a stolen motor vehicle on four prior occasions, as well as several other felony offenses. This history combined with the facts of this case indicated that defendant was aware of his right to counsel or appointed counsel.

¶ 26    Third, when counsel notified the court that defendant wished to discharge him, the court admonished defendant, at length, of the dangers of self-representation. Throughout this recitation, the court repeatedly confirmed that defendant understood the risks of representing himself and that he maintained his desire for self-representation. At the conclusion of the admonishment, defendant signed a written waiver of his right to counsel, confirming that he understood the right he was waiving and the implications of that waiver. The court's advisory admonishments went beyond the requirements of Rule 401(a) and apprised defendant of the harsh realities of self-representation. While they did not apprise defendant of his right to counsel or appointed counsel, they insured that defendant was well aware of the consequences of proceeding to trial without counsel and the nature of the right he was giving up.

¶ 27    In light of the detailed advisory admonishment given by the court, defendant's criminal history, and his representation by appointed counsel prior to becoming a self-represented litigant, we conclude that the court substantially complied with Rule 401(a), and defendant made a knowing and voluntary waiver of his right to counsel. As no error occurred, further plain error review is unnecessary.

¶ 28                                    B. Prosecutorial Misconduct

¶ 29    Defendant argues the State shifted the burden of proof to him when it stated during its closing and rebuttal arguments, "The defendant's story doesn't add up. There is no evidence of the defendant's story" and "Now, where is this mystery person selling the gold Honda? I don't see anybody. I don't see a girlfriend who was getting the Honda bought for her." Defendant claims this argument was equivalent to accusing defendant of not calling additional witnesses to prove his innocence.

¶ 30    Assuming that the State's comments improperly shifted the burden of proof to defendant, we find that the State's alleged prosecutorial misconduct is not a reversible plain error under either prong of the plain error doctrine.

¶ 31    First, the evidence in this case was not so closely balanced that the error would prejudice defendant. Here, the State charged defendant with unlawful possession of a stolen motor vehicle. This charge required proof that defendant possessed a vehicle that he knew to be stolen. 625 ILCS 5/4-103(a)(1) (West 2018). Defendant's knowledge maybe inferred:

> "(A) from the surrounding facts and circumstances, which would lead a reasonable person to believe that the vehicle or essential part is stolen or converted; or (B) if the person exercises exclusive unexplained possession over

11

the stolen or converted vehicle or essential part, regardless of whether the date on which the vehicle or essential part was stolen is recent or remote." *Id.*

¶ 32	The Engelmans' unrebutted testimony established that they did not know defendant and did not permit him to drive their vehicle. After the Engelmans reported the vehicle missing, Horstmann observed defendant driving the vehicle. The only evidence that refuted the Engelmans' theft report was defendant's statement that he was test driving the vehicle. However, defendant's statement is undermined by the testimony of Horstmann and Johnson that established that defendant had exclusive control over the vehicle after the Engelmans reported it missing. See *id.* § 4-103(a)(1)(B). Defendant's credibility was further eroded by the evidence that he evaded the traffic stop, ran from the scene, and gave a false name to Bukowski. Therefore, the evidence of defendant's unlawful possession of the Honda was not closely balanced.

¶ 33	Second, the State's alleged closing and rebuttal argument errors are not subject to reversal under the second prong of the plain error doctrine. "Where the defendant claims second-prong plain error, a reviewing court must decide whether the defendant has shown that the error was so serious it affected the fairness of the trial and challenged the integrity of the judicial process." *People v. Sebby*, 2017 IL 119445, ¶ 50. "If the defendant carries that burden, '[p]rejudice *** is presumed because of the importance of the right involved.' " *Id.* (quoting *People v. Herron*, 215 Ill. 2d 167, 187 (2005)).

¶ 34	Assuming the State's comments were improper, defendant has not established that they were so serious that they affected the fairness of his trial and challenged the integrity of the judicial process. First, the comments did not imply that defendant had a burden to present witnesses to support his theory. When the comments are viewed in context of the entire closing

12

and rebuttal arguments, it is clear that the State was generally commenting that the evidence failed to support defendant's theory of the case—a point that the State may properly critique. See *People v. Evans*, 209 Ill. 2d 194, 225 (2004) ("counsel may comment upon defense characterizations of the evidence or case"). Second, the State's comments did not affect the integrity of defendant's trial because immediately after the comments, the court instructed the jury that the arguments are not evidence. *People v. Simms*, 192 Ill. 2d 348, 396 (2000). The jury is presumed to have followed this instruction, and defendant points to no evidence to rebut this presumption. *Id.* Therefore, the State's allegedly erroneous comments did not rise to the level of second prong plain error.

¶ 35                                    III. CONCLUSION

¶ 36        For the foregoing reasons, we affirm the judgment of the circuit court of Kankakee County.

¶ 37        Affirmed.