# Illinois Official Reports

## Appellate Court

---

**People v. Herndon, 2015 IL App (1st) 123375**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES HERNDON, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-12-3375 |
| Rule 23 order filed | June 9, 2015 |
| Rehearing denied | July 13, 2015 |
| Motion to publish allowed and | |
| Rule 23 withdrawn | July 16, 1015 |
| Opinion filed | July 21, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CR-6396; the Hon. William H. Hooks, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier and Caroline E. Bourland, both of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Jeffrey Allen, Tasha-Marie Kelly, and Paul J. Connery, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE PIERCE delivered the judgment of the court, with opinion.<br>Presiding Justice Simon and Justice Neville concurred in the judgment and opinion. |

# OPINION

¶ 1    Following a jury trial, defendant James Herndon was convicted of delivery of a controlled substance (720 ILCS 570/401(d)(i) (West 2010)) and was sentenced to a term of 10 years' imprisonment. On appeal, defendant argues that he should be granted a new trial because the trial court did not substantially comply with Illinois Supreme Court Rule 401(a) (eff. July 1, 1984), and because of prosecutorial misconduct during closing argument. For the following reasons, we affirm.

¶ 2                                              BACKGROUND

¶ 3    On February 12, 2009, defendant was charged by way of indictment with two counts of delivery of a controlled substance. The State alleged defendant committed the offense of delivery of a controlled substance in that he delivered less than one gram of cocaine to undercover officer Donald Clark and that the offense occurred within 1,000 feet of a school.

¶ 4    On June 4, 2009, at defendant's first appearance, an assistant public defender was appointed to represent him. Defendant was also represented by the same assistant public defender at a June 10, 2010, hearing on defendant's motion to suppress identification. At the hearing on the motion, Officer Donald Clark testified that on February 12, 2009, around 10:30 a.m., approximately one hour after completing an undercover purchase of narcotics from defendant, he viewed a photo array and positively identified both defendant and his codefendant Larrie Green. There were six individuals in the photo array, including both defendant and codefendant. The trial court ruled that the photo array was not unduly suggestive and denied defendant's motion to suppress identification.

¶ 5    On June 21, 2010, defendant informed the trial court that he wished to represent himself due to "irreconcilable differences" with his attorney. Based on the trial court's inquiries, defendant stated that he had been in custody for 13 months; that he was 56 years old; that he had completed 3 years of college; that he was not under any influence of drugs or alcohol; and that his criminal background was "very extensive." The trial court advised defendant multiple times not to represent himself, stating that "it is almost always a disaster," among other comments regarding *pro se* representation. The trial court also informed defendant that he would not receive assistance from any other attorney or from the court. During this exchange, the following colloquy occurred:

    "ASSISTANT STATE'S ATTORNEY: The defendant is charged with a Class 1 as well as a Class 2. For the Class 1, he is facing four to 15 years. Based on his background, he is eligible for an extended term, which is 15 to 30 years mandatory with supervised release of two years.

    THE COURT: Is it still probationable?

    ASSISTANT STATE'S ATTORNEY: No, [Y]our Honor.

    THE COURT: So what you face is very serious.

    THE DEFENDANT: Yes, sir."

¶ 6    The trial court additionally informed defendant that he met the basic requirement to proceed *pro se*. However, the court inquired further as to why defendant wished to represent himself. Defendant revealed that he disagreed with his attorney's strategy, and he wanted to

explore pretrial strategy, while his attorney wanted to go to trial immediately. When defendant asked if he would later be allowed to change his mind about being represented by counsel, the trial court stated that it depended on the stage of the proceedings, but that if defendant decided to represent himself, they would go forth with the assumption that defendant could not change his decision. The court gave defendant one week to think about his decision.

¶ 7 The next week, on June 28, 2010, defendant requested a different assistant public defender. The trial court stated that was not an option and defendant chose to proceed *pro se*.

¶ 8 Following defendant's decision to proceed *pro se*, he filed several motions, including discovery motions, a motion to dismiss indictment, a motion to quash arrest, and a motion to suppress video evidence over the next several court dates. Defendant argued a motion to dismiss his indictment on the basis that the money used by the undercover officers was never recovered. Defendant also argued a motion to quash arrest on the basis that he was not arrested at the address listed on the arrest warrant. Defendant also argued a motion to suppress video evidence because the video "might be tainted." The trial court denied each motion.

¶ 9 On November 30, 2010, the State extended a plea offer to defendant, which defendant rejected. On June 24, 2011, the trial court ruled on motions *in limine*, granting the State's motion to bar defendant from bringing out irrelevant prosecutorial or police misconduct. On June 29, 2011, after defendant was granted his request to view the inventoried bag of narcotics, the matter was set for trial.

¶ 10 On September 2, 2011, defendant informed the trial court that he wanted to be represented by counsel. A public defender stepped up, but the State objected to representation by the attorney because he had represented the codefendant, Larrie Green. Ultimately, defendant waived any conflict of interest regarding the attorney's representation and also agreed not to call the codefendant as a witness at trial.

¶ 11 On November 14, 2011, defendant's attorney informed the court that the State again made a plea offer, which defendant again rejected. Prior to the commencement of trial, the State dropped the count charging defendant with delivery of a controlled substance within 1,000 feet of a school. The State indicated that it would be proceeding on:

> "delivery of a controlled substance in that he unlawfully and knowingly delivered otherwise than is authorized under the Illinois Controlled Substance Act of said State of Illinois, then in force and effect, less than one gram of a substance containing a certain controlled substance, to wit: Cocaine, in violation of Chapter 720, Act 570, Section 401(d) of the Illinois Compiled Statute, 1992, as amended."

Defense counsel indicated that he had "noted" the charges.

¶ 12 On January 24, 2012, the matter proceeded to trial. Officer Clark testified that, on February 12, 2009, he was assigned to act as a "buy officer." Other officers involved in the investigation were assigned to surveillance or enforcement duties. Around 10:20 a.m., Officer Clark drove his vehicle down the block of 4400 Gladys, and parked his car on the south side of Gladys. Officer Clark was dressed in plain clothes and drove an unmarked car. Almost immediately, defendant, whom Officer Clark identified in court, approached Officer Clark's side window. Officer Clark testified that he told defendant "I want to get four rocks," while holding up four fingers with his right hand. Officer Clark testified that "rock" is the street term for crack cocaine. Defendant then walked across the street and talked to another individual identified as Larrie Green. Defendant indicated to Officer Clark that he could only sell two rocks, and, after

- 3 -

speaking with Green, defendant walked eastbound and out of Officer Clark's view. Officer Clark testified that he then spoke with Green until defendant returned with "two clear plastic bags containing a white rock-like substance." Officer Clark testified that he gave defendant $20 in pre-recorded funds, and then observed Green place the narcotics into his pocket, while defendant walked back across Gladys, and Green walked westbound out of Officer Clark's view. Officer Clark testified that shortly thereafter, Green reappeared and waved at Officer Clark, so Officer Clark parked just west of Kilbourn Avenue on Gladys. Green again approached Officer Clark's vehicle and handed him the two clear plastic bags containing a rock-like substance. Officer Clark testified that he then handed Green $20 in prerecorded currency and placed the plastic bags in his coat pocket.

¶ 13    Following the transaction, Officer Clark radioed his partners and relayed that he made a positive narcotics transaction and gave a description of defendant. Officer Clark left the immediate area. About five minutes later, Officer Clark drove back to the area of the transaction and observed defendant being interviewed by officers. Officer Clark radioed that defendant was the person who sold him two bags of suspect narcotics. Due to safety concerns for the officers and the ongoing investigation, neither defendant nor Green was arrested at the scene.

¶ 14    Officer Clark testified that he then proceeded to the police station at Homan Square, where the crack from defendant was inventoried separately from the crack he received from Green. Officer Clark also viewed the video depicting the transaction. Officer Clark narrated the video in open court and the video was published to the jury. Officer Clark also testified that on February 12, 2009, he viewed a six person photo array at the police station, and identified both defendant and Green.

¶ 15    Officer Brian Ortiz testified that, on February 12, 2009, he participated in the investigation as an enforcement officer. Officer Ortiz testified that at 10:30 a.m., while inside an unmarked police vehicle, Officer Clark stated over the radio that he had made a narcotics purchase. Officer Ortiz and the other officers proceeded in plain clothes to the 4400 block of Gladys. There, Officer Ortiz observed defendant, who matched the description given by Officer Clark, near an alley on the north side of Gladys.

¶ 16    Officer Ortiz testified that he and his partners approached defendant in their vehicle and had a conversation with him while he was at their car window. Officer Ortiz testified that defendant identified himself as James Herndon. During this conversation, Officer Ortiz received a radio transmission from Officer Clark, confirming that the subject at Officer Ortiz's window was the man who sold Officer Clark narcotics. Officer Ortiz then took down defendant's name, date of birth, and address, but did not arrest him because the officers did not want to alert other sellers to the presence of the larger investigation.

¶ 17    Illinois State Police Forensic Scientist Paul Titus was qualified as an expert in forensic chemistry, and testified that the substance in each bag was less than 0.01 grams and contained cocaine.

¶ 18    The parties stipulated that Cook County Sheriff Investigator Boffa would testify that on May 5, 2009, defendant was arrested, photographed, and searched, and that no funds used in the undercover purchase were found on his person. It was further stipulated that he would testify that the State's Exhibit Number 6 was a true and accurate photograph of defendant taken at the time of his arrest. The State rested.

¶ 19    Defendant's motion for a directed verdict was denied. Defendant did not call any witnesses. After hearing all of the evidence, the jury found defendant guilty of delivery of a controlled substance. After judgment was entered on the verdict, defendant filed several posttrial motions. Defendant's motion to vacate the verdict and motion for a new trial were heard on July 20, 2012, and were denied on August 30, 2012.

¶ 20    On October 5, 2012, the trial court conducted a sentencing hearing. The State indicated the defendant was statutorily mandated to be sentenced as a Class X felon. Defendant disputed his Class X status, and after multiple continuances, defendant requested to represent himself *pro se*. After the trial court admonished defendant again of the dangers of proceeding *pro se*, defendant was sentenced to 10 years' imprisonment as a Class X felon. It is from this judgment that defendant appeals.

¶ 21                                    ANALYSIS

¶ 22    Defendant first argues that the trial court failed to substantially comply with Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) before permitting him to represent himself during pretrial proceedings. Defendant argues he is entitled to a new trial as a result.

¶ 23    At the outset, the State argues that defendant has forfeited any issue regarding his waiver of counsel due to defendant's failure to object and include the issue in a posttrial motion in order to preserve the issue for appeal. Defendant argues, citing *People v. Jiles*, 364 Ill. App. 3d 320, 328 (2006), that the requirement of a timely objection and the inclusion of the issue in a posttrial motion are unnecessary here because the right to counsel is fundamental, thus invoking plain error review.

¶ 24    Forfeiture of an issue occurs where a defendant fails to object to an error at trial and does not raise this issue in a written posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988); *People v. Woods*, 214 Ill. 2d 455, 470 (2005). The plain error doctrine is a narrow and limited exception to the waiver rule. *People v. Herron*, 215 Ill. 2d 167, 177 (2005) (quoting *People v. Hampton*, 149 Ill. 2d 71, 100 (1992)). "[T]he plain-error doctrine bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence." *Id.* at 186-87. "In both instances, the burden of persuasion remains with the defendant." *Id.* at 187.

¶ 25    The Illinois Supreme Court has made clear that before a reviewing court can invoke the plain error exception, it must determine whether error occurred. *People v. Chapman*, 194 Ill. 2d 186, 226 (2000). We therefore must determine whether the trial court substantially complied with Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) to determine whether error occurred here.

¶ 26    Defendant argues that the trial court failed to comply with Illinois Supreme Court Rule 401(a) (eff. July 1, 1984), in that the trial court failed to inform him of the nature of the charges against him and that he would be eligible for Class X sentencing if he was convicted when it allowed defendant to proceed *pro se* during part of the pretrial proceedings. Rule 401(a) requires that before the trial court permits a defendant in a criminal trial to represent himself, the court must admonish the defendant about: (1) the nature of the charges against him, (2) the minimum and maximum penalties the court could impose, and (3) his right to counsel. *Id.* Rule 401(a) admonishments does not require strict, technical adherence to Supreme Court Rule 401(a), but substantial compliance is required. *People v. Langley*, 226 Ill.

App. 3d 742, 749 (1992). Absent at least substantial compliance, a defendant's wavier is ineffective. *Id.*

¶ 27    Here, defendant was first made aware of the nature of the charges against him at his arraignment. At his arraignment, the prosecutor stated that defendant had "delivered 2 bags of suspect cocaine to the undercover officer in exchange for $20 United States Currency 1505 funds." Moreover, at defendant's motion to suppress hearing, Officer Clark testified extensively regarding his narcotics drug transaction. Lastly, prior to commencement of trial, the State again thoroughly informed defendant of the nature of the charges against him when they dismissed the offense of delivery of a controlled substance within 1,000 feet of a school. Defendant was represented by counsel at these specific time periods and was present in court on each of these dates.

¶ 28    Defendant has experience in the criminal justice system and admittedly has a "very extensive" criminal background. His criminal background includes a conviction for a nearly identical offense of possession of a controlled substance with intent to deliver in 2000. Defendant had five other narcotics convictions, two firearm related convictions and a burglary conviction.

¶ 29    Furthermore, when defendant represented himself during pretrial proceedings he made numerous discovery requests. As part of the discovery process, defendant had an opportunity to inspect the 1505 fund sheets, which showed the currency with prerecorded serial numbers used in investigations, the narcotics and the video of the transaction that was later used at trial. In addition, defendant filed three pretrial motions. He also filed and argued three motions: a motion to dismiss the indictment based on the fact that the funds used in the undercover buy were never recovered, a motion to quash arrest on the basis that he was not arrested at the address listed on the search warrant and a motion to suppress the video evidence.

¶ 30    With all of this in mind, including the fact that defendant was represented by counsel several months before trial, during trial and throughout sentencing, we cannot say that defendant was not aware of the nature of the charges, or that the trial court failed to inform defendant of the nature of the charges against him during the short time that defendant proceeded *pro se* during the pretrial stage such that substantial compliance with Rule 401(a) was not accomplished.

¶ 31    Defendant also argues that he was not admonished in substantial compliance with Illinois Supreme Court Rule 401(a)(2) (eff. July 1, 1984) regarding his potential sentencing range. As previously stated, defendant was sentenced as a Class X offender to 10 years' imprisonment based on his criminal history.

¶ 32    On June 21, 2010, the day that defendant first indicated that he wished to proceed *pro se* based on irreconcilable differences with his attorney, the court asked the prosecutor to read on the record what defendant's possible sentences would be. The prosecutor informed the court and defendant that he was charged with a Class 1 and a Class 2 offense but because of his background, he was "eligible for an extended term, which is 15 to 30 years with a mandatory supervised release of two years." Then, based on that information, the trial court addressed defendant, and stated that what he faced was "very serious," to which defendant responded, "Yes, sir."

¶ 33    Although defendant was not specifically informed that he would be sentenced as a Class X offender if he was found guilty, defendant was correctly admonished regarding the minimum and maximum extended term sentence he faced as a Class X offender. 730 ILCS 5/5-8-2(a)

(West 2010). We therefore find that this admonishment was substantially compliant with Rule 401(a). We have found no case law, nor has defendant cited any, that stands for the proposition that a defendant must be informed of the specific class of offense for which he will be sentenced in addition to the minimum and maximum possible penalties. We find that the trial court committed no error with respect to Illinois Supreme Court Rule 401(a) admonishments and therefore plain error analysis is unnecessary.

¶ 34 Defendant next argues that the prosecutor engaged in prosecutorial misconduct during the State's opening statement and closing argument. Specifically, defendant claims that the prosecutor misstated the law in arguing the police report was not evidence, diverted the jury's attention from the gap in its chain of custody evidence by misstating the evidence and improperly asked the jurors not to turn their backs on the citizens in the neighborhood where defendant sold narcotics. Defendant additionally argues that he received ineffective assistance of counsel due to his attorney's failure to object to the complained of comments.

¶ 35 We note first that no objection was made to any of the remarks now complained of by defendant. Consequently any error is forfeited. *People v. Tapia*, 2014 IL App (2d) 111314, ¶ 36. Defendant invites us to review these forfeited errors for plain error. As stated above, a plain error analysis first requires a finding of error. *Chapman*, 194 Ill. 2d at 226.

¶ 36 Generally, a prosecutor is given wide latitude in closing arguments. *People v. Page*, 156 Ill. 2d 258, 276 (1993). This includes commenting on the evidence and drawing any legitimate inferences from the facts in evidence, even if they are unfavorable to the defendant. *People v. Simms*, 192 Ill. 2d 348, 396 (2000). It is improper for a prosecutor to make comments irrelevant to the question of guilt or innocence and that only serve to inflame the jury's passions against the defendant. *People v. Blue*, 189 Ill. 2d 99, 128 (2000). Prosecutorial misconduct warrants reversal only if it caused substantial prejudice to the defendant, taking into account the content and context of the comments, its relationship to the evidence, and its effect on the defendant's right to a fair and impartial trial. *Id*. The trial court may cure any errors by giving the jury proper instructions on the law to be applied, informing the jury that arguments are not evidence, or sustaining the defendant's objections and instructing the jury to disregard the inappropriate remark. *Id*. at 131-32.

¶ 37 We recognize the conflict regarding the correct standard for reviewing a prosecutor's remarks during argument. *People v. Daniel*, 2014 IL App (1st) 121171, ¶ 32. In *People v. Wheeler*, 226 Ill. 2d 92, 121 (2007), and *People v. Sims*, 192 Ill. 2d 592, 615 (2000), our Illinois Supreme Court suggested that we should review issues of prosecutorial misconduct in closing argument *de novo*. In *People v. Hudson*, 157 Ill. 2d 401, 441 (1993), however, the court suggested that we should review this issue for an abuse of discretion. We find these standards to be a distinction without a difference in this case as the result would be the same under either standard.

¶ 38 Here, defendant complains of three alleged improper statements: where the State commented that a police report was not evidence, where the State commented about which bags of narcotics were cocaine, and where the State commented that the victims of defendant's crime were the community members of the neighborhood.

¶ 39 Defendant claims that the prosecutor misstated the law in arguing that the police report was not evidence. During closing argument, defense counsel pointed out a discrepancy between the number used to inventory the narcotics defendant sold to Officer Clark and the inventory

number included in Officer Clark's report. In rebuttal, the prosecutor argued that the discrepancy was a minor misprint.

¶ 40    It is well established that police reports are not evidence. *People v. Shief*, 312 Ill. App. 3d 673, 680 (2000). Here the prosecutor acknowledged the impeachment value of the misprint, but pointed out that the report could not be used as evidence. This was an accurate statement and no error occurred.

¶ 41    Defendant next complains that the prosecutor "further diverted the jury's attention away from rational deliberation" when the prosecutor was commenting on physical evidence in this case and its testing and stated that Titus told the jury "about testing three other items, the items from Mr. Green, and he also told you that those were also cocaine."

¶ 42    This particular statement was a minor misstatement. Titus actually testified that he tested two separate samples, not three. The prosecutor's statement that Titus tested three samples was corrected through testimony and instructions to the jury. Furthermore, the other "three" items were attributed to Green, not defendant. We therefore find that this statement does not constitute error.

¶ 43    Finally, defendant contends that it was improper for the prosecutor to comment that the victims of defendant's crime were the individuals who live in the vicinity of the narcotics transaction. Specifically, the prosecutor stated:

> "Please don't think for a minute that this crime is a victimless crime because it's not. The victim's [*sic*] of the defendant's crime live on that 4400-block of West Gladys, the neighbors, the families, the kids that have to wake up and have an open air drug market on their street. Don't think that this is a victimless crime that you can turn your backs on because the people in that neighborhood can't. The victim's [*sic*] are the neighbors, the families, the kids, the users themselves. The list goes on and on. Please don't turn your backs on their troubles. Give those victim's [*sic*] justice and find this defendant guilty of delivery of a controlled substance. Thank you."

¶ 44    While "a prosecutor may not characterize the defendant as an 'evil' person," he or she "may comment unfavorably on the evil effects of the crime and urge the jury to administer the law without fear." *People v. Nicholas*, 218 Ill. 2d 104, 121-22 (2005). However, the prosecution must refrain from focusing its argument on "[t]he broader problems of crime in society" or engaging in "an extended and general denunciation of society's ills." *People v. Johnson*, 208 Ill. 2d 53, 77, 79 (2003).

¶ 45    In the case at bar, the prosecutor's comments about the impact of defendant's narcotics sales on the families that lived nearby properly focused upon the negative effects of defendant's conduct and not on crime in society at large. The evidence presented at trial showed that defendant boldly sold narcotics to Officer Clark openly in a residential area in broad daylight. It was not improper for the prosecution in this case to comment upon the negative effects of defendant's conduct in its closing argument. See *People v. Melton*, 2013 IL App (1st) 060039, ¶¶ 23-24; *People v. Harris*, 129 Ill. 2d 123, 159-60 (1989). Accordingly, we reject defendant's argument that this comment was error.

¶ 46    We need not address defendant's claim that counsel was ineffective for failing to object to the above statements by the prosecutor during closing argument because even if defendant were able to establish that his counsel's performance fell below an objective standard of reasonableness, defendant cannot establish any prejudice where no error occurred.

¶ 47                              CONCLUSION

¶ 48        Accordingly, for the reasons set forth above, we affirm the judgment of the circuit court of Cook County.

¶ 49        Affirmed.