2021 IL App (1st) 191709-U

No. 1-19-1709

Order filed December 22, 2021

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 174 |
| | ) | |
| MICHAEL TINKER, | ) | Honorable |
| | ) | William G. Gamboney, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Gordon and Justice Ellis concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Defendant's conviction for aggravated domestic battery is affirmed where the court substantially complied with Illinois Supreme Court Rule 401(a) in admonishing defendant prior to allowing him to waive representation by counsel and proceed *pro se*.

¶ 2   Following a jury trial, defendant Michael Tinker was found guilty of aggravated domestic battery and sentenced to 10 years' imprisonment. On appeal, he alleges that the trial court failed to substantially comply with Illinois Supreme Court Rule 401(a)(2) (eff. July 1, 1984) before

allowing him to waive counsel, where it advised him that he faced a maximum mandatory supervised release (MSR) term of three years but he received a four-year MSR term. We affirm.

¶ 3    Defendant was charged by indictment with one count of attempted first degree murder (720 ILCS 5/8-4(a); 9-1(a)(1) (West 2016)), and one count of aggravated domestic battery (720 ILCS 5/12-3.3(a-5) (West 2016)), premised on an incident in Chicago on December 2, 2017.

¶ 4    Because defendant only challenges his pretrial Rule 401(a) admonishments on appeal, we set forth a description of the proceedings relevant to that issue, as well as a brief summary of the facts adduced at trial.

¶ 5    Prior to trial, defendant was initially represented by a public defender but subsequently sought to retain a private attorney. On January 31, 2018, the trial court permitted the public defender to withdraw and the private attorney to file an appearance.

¶ 6    On December 17, 2018, the private attorney informed the court that defendant had filed a complaint against him with the Attorney Registration and Disciplinary Commission (ARDC) and asked for leave to withdraw. The court asked defendant if he wanted to say anything, and defendant stated, "For the record, I am not firing him. He is withdrawing. I don't mind. I would like to represent myself pro per [*sic*] as well and proceed with assistance of counsel." Defendant told the court he was "demanding trial today." The court granted the private attorney leave to withdraw, stating defendant's ARDC complaint presented a conflict of interest.

¶ 7    Then, the court asked defendant if he wished to represent himself. Defendant responded, "Proceed pro per [*sic*] with assistance of counsel." The court told him there was "no such thing," but he had a right to proceed *pro se* if he wanted. In order that defendant "understand what the stakes are here," the court elicited from defendant that he had earned a GED, he had completed

two years of college, he had never represented himself before, he had represented someone else, and he had done legal research before. The court asked defendant if he understood that the assistant state's attorney who would be prosecuting him had a law degree, and defendant did not have experience practicing criminal law. Defendant stated, "Yes, your Honor. But my Sixth Amendment right gives me assistance of counsel." The court told defendant "it gives you the assistance of counsel." The court then confirmed that defendant could not afford to hire an attorney and stated, "I will appoint the public defender if you want me to." Defendant stated, "As a sovereign citizen, I cannot represent myself." The court stated, "You're entitled to represent yourself," and defendant responded, "Without assistance of counsel then."

¶ 8     The court informed defendant that if he did not want an attorney appointed, he would represent himself and "would be held to the same rules, the same rules of evidence, the same rules of procedure as any attorney would be in this case." Defendant confirmed that he understood. The State informed the court defendant was charged with Class X attempted murder and Class 2 aggravated domestic battery. The court told defendant that if he was convicted, he could receive a sentence of up to 30 years' imprisonment, and "would also have to serve a period of mandatory supervised release, that's what they used to call parole, for 3 years." Defendant stated that he understood this but added that his indictment stated he was charged with aggravated domestic battery and asked, "Why is it—what is the law saying—stating that I have attempt murder?" The court informed defendant he was also charged with attempted murder. Defendant confirmed that he was demanding trial, but then confirmed with the court that he wanted to proceed to discovery first. The court told defendant he was representing himself and continued the case.

¶ 9    On January 7, 2019, the court asked defendant if he was representing himself, and defendant stated, "Proper persona, yes, sir." The court told defendant there was "no such thing," but stated that "per our rules, we have pro se, you are representing yourself." The State confirmed that it had allowed defendant to view evidence, and the parties agreed on a jury trial date.

¶ 10    The jury trial commenced on March 12, 2019. Taijite Tinker testified she was married to defendant. On December 2, 2017, she lived with defendant and six children, three of whom she had with defendant.[1] That morning, defendant accused Taijite of infidelity. They were arguing in the basement bathroom and Taijite pushed defendant's chest. Defendant grabbed Taijite from behind, placed her in a "full nelson" with his arms around her neck, and told her she had to "go to sleep." Taijite "went limp" three times and fell unconscious.

¶ 11    Taijite's daughter Amri Graves testified that she overheard Taijite and defendant, her stepfather, arguing inside the bathroom, heard "banging" from the bathroom, and heard defendant say, "It's time for you to go to sleep." When the banging stopped, Graves saw Taijite crying at the bottom of the bathroom steps.

¶ 12    Defendant called Frances Robin Morgan Major, who testified that on December 2, 2017, defendant called her about three times to talk about "infidelity" issues. She heard Taijite "antagonizing" defendant over the phone, and defendant was "combative" and told Taijite to leave him alone. After defendant told Major "what had happened," Major told him to call the police and "get up out of there," and then offered to call the police for him.

¶ 13    Defendant testified that he had an argument with Taijite that morning, called Major, and entered the bathroom. Taijite also entered the bathroom, prevented him from exiting, and pushed

_____

[1] We will refer to Taijite Tinker by her first name as she and defendant have the same last name.

him. He had a "slight altercation" with Taijite and told Major on the phone what had occurred. Graves approached, "tended to" Taijite, and left with her.

¶ 14    On cross-examination, defendant stated he did not recall placing Taijite in a chokehold, but it was "possible" he did so to defend himself. He then testified that he placed Taijite in a chokehold after she attempted to hit him with a can of Raid. Taijite was able to speak while in the chokehold and said she "didn't do anything." He kept her in a choke hold "[u]ntil she went to the ground." Defendant removed the can of Raid from her hand and released her.

¶ 15    In rebuttal, the State admitted a certified copy of defendant's prior conviction for unlawful use of a weapon by a felon.

¶ 16    The jury found defendant guilty of aggravated domestic battery, and not guilty of attempted first degree murder.

¶ 17    After trial, on April 4, 2019, defendant requested to have an attorney represent him and was appointed a public defender. Counsel filed a posttrial motion, alleging the State failed to prove defendant guilty beyond a reasonable doubt. While counsel was representing him, defendant also filed multiple *pro se* motions alleging acts of prosecutorial misconduct.

¶ 18    The court denied defendant's *pro se* motions and the motion for new trial submitted by counsel. After a hearing, the court sentenced defendant to 10 years' imprisonment and 4 years' MSR.

¶ 19    On appeal, defendant argues his conviction should be reversed and the cause remanded for a new trial as the circuit court permitted him to waive counsel without ensuring his waiver was knowing. Specifically, he contends the court failed to substantially comply with Rule 401(a)(2), where it advised him that he faced a three-year MSR term, but he was sentenced to a four-year

MSR term. The State responds that defendant forfeited the issue by not raising it at trial or in a posttrial motion, and that the trial court nonetheless substantially complied with Rule 401.

¶ 20     Defendant failed to preserve the issue on appeal, as he did not object at trial or raise it in a posttrial motion. See *People v. Reese*, 2017 IL 120011, ¶ 60 (to preserve an issue for appeal, the issue must be raised in a contemporaneous objection and posttrial motion). He asserts that even if the issue on appeal was forfeited, we may nonetheless consider its merits under the plain error doctrine.

¶ 21     The plain error doctrine allows a reviewing court to address a forfeited claim where a "clear or obvious error occurred," and either (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) the "error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." (Internal quotation marks omitted.) *Id.* ¶ 69. Defendant carries the burden of persuasion under both prongs of the rule. *People v. Lewis*, 234 Ill. 2d 32, 43 (2009).

¶ 22     Defendant argues second prong plain error. Under the second prong, "[p]rejudice to the defendant is presumed because of the importance of the right involved." *People v. Herron*, 215 Ill. 2d 167, 187 (2005). "Because the right to counsel is fundamental, we may review a failure to substantially comply with Rule 401(a) under the plain-error doctrine despite a defendant's failure to properly preserve such an error." *People v. Pike*, 2016 IL App (1st) 122626, ¶ 109. However, under either prong, defendant must first show a clear or obvious error occurred. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Here, we find no error.

¶ 23 "It is well established that the sixth amendment to the United States Constitution guarantees an accused in a criminal proceeding both the right to the assistance of counsel and the correlative right to proceed without counsel." *People v. Haynes*, 174 Ill. 2d 204, 235 (1996). Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) provides that the circuit court shall not permit a defendant to waive counsel without first, "by addressing the defendant personally in open court, informing him of and determining that" he understands the following:

"(1) the nature of the charge;

(2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and

(3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court."

¶ 24 "The purpose of Rule 401(a) is to ensure that a waiver of counsel is knowingly and intelligently made." *Haynes*, 174 Ill. 2d at 241. While compliance with Rule 401(a) is required for an effective waiver of counsel, "[s]trict technical compliance" is not always required. (Internal quotations marks omitted.) *People v. Wright*, 2017 IL 119561, ¶ 41. "Rather, substantial compliance will be sufficient to effectuate a valid waiver if the record indicates that the waiver was made knowingly and voluntarily, and the admonishment the defendant received did not prejudice his rights." *Haynes*, 174 Ill. 2d at 236.

¶ 25 While a defendant does not need the skill and experience of a lawyer to competently and intelligently choose self-representation, "he should be made aware of the dangers and disadvantages of such representation, so that the record will establish that he knows what he is

doing and his choice is made with eyes open." (Internal quotation marks omitted.) *People v. Kidd*, 178 Ill. 2d 92, 104 (1997). "The requirement of knowing and intelligent choice calls for nothing less than a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* at 104-05.

¶ 26     Whether there was substantial compliance with Rule 401(a) depends on the particular facts of the case. *Wright*, 2017 IL 119561, ¶ 54. "The legal issue of whether the trial court substantially complied with Rule 401(a) is reviewed *de novo*, while the ultimate question of whether the defendant's waiver of counsel was knowing and voluntary is reviewed for an abuse of discretion." *People v. Khan*, 2021 IL App (1st) 190051, ¶ 46.

¶ 27     The parties do not dispute that defendant was properly admonished as to subsections (a)(1) and (a)(3) of Rule 401. The parties also do not dispute that he was incorrectly admonished that he could receive a three-year MSR term, when he was statutorily mandated to receive a four-year MSR term. See 730 ILCS 5/5-8-1(d)(6) (West Supp. 2017) (four-year MSR term for aggravated domestic battery). The dispute on appeal essentially turns on whether the circuit court substantially complied with Rule 401(a)(2) when it correctly admonished defendant as to the maximum potential prison term he could receive, but understated the applicable MSR term by one year. We find that the court did substantially comply with Rule 401(a)(2) before allowing defendant to proceed *pro se*, as the record abundantly shows defendant voluntarily and knowingly waived representation by counsel, and the incorrect admonishment regarding his MSR term did not prejudice his rights. See *Haynes*, 174 Ill. 2d at 236.

¶ 28     Prior to trial, defendant filed an ARDC complaint against his private counsel and asked to proceed "pro per." While defendant insisted on proceeding "pro per" or "[p]roper persona" and

stated that he was a sovereign citizen, the court ultimately confirmed with defendant multiple times that he was asking to represent himself. See *Id.* at 243-44 (the defendant's decision to waive counsel was made freely, knowingly, and intelligently where the defendant reiterated his desire to represent himself "several" times). Moreover, in order that defendant understand "the stakes," the court questioned him about his personal history, eliciting defendant had earned a GED, had completed two years of college, had never represented himself before but had represented someone else, and had done legal research in the past. *People v. Redd*, 173 Ill. 2d 1, 21-22 (1996) (the court sufficiently assessed defendant's ability to understand his waiver of counsel, where the court asked the defendant what level of education he had achieved and was able to observe his "demeanor, appearance, and statements," and the record reflected the defendant had experience with the legal system).

¶ 29    The court warned defendant that he would be representing himself against an attorney who had a law degree, and it would be "seemingly unfair" as he did not have experience practicing criminal law. Defendant stated he understood. It informed defendant that he had a right to counsel, and that the court would appoint a public defender to represent him if he wanted, but that defendant was also entitled to represent himself if he so wished. Defendant told the court he would proceed without counsel. The court again offered to appoint an attorney, warning defendant he would be held to the same rules as any attorney. Defendant stated he understood.

¶ 30    Additionally, the court confirmed with defendant that he was charged with attempted murder and aggravated domestic battery. The court admonished him that he could receive a sentence of up to 30 years' imprisonment, and that he would have to serve a three-year MSR term, which the court explained was "what they used to call parole." Defendant stated that he understood,

and the court then granted defendant leave to proceed *pro se*. Given this record, we find that defendant's waiver was knowing, voluntary, and intelligent, as the court confirmed with him that he wished to represent himself, ascertained his skill and education level to determine his understanding of the choice he was making, and adequately warned him of the "dangers and disadvantages" of self-representation, including the resulting sentence he could receive. See *People v. Maxey*, 2018 IL App (1st) 130698-B, ¶¶ 46-47 (citing *Kidd*, 178 Ill. 2d at 104-05).

¶ 31    In reaching this conclusion, we are not persuaded by defendant's argument that the incorrect admonishment regarding his MSR term demonstrated the court did not ensure defendant's waiver was knowing. We do not find the understatement of the MSR term "prejudice[d] his rights" in any way. See *Haynes*, 174 Ill. 2d at 236. Nothing in the extensive discussion between defendant and the court demonstrates he was at all concerned with the sentence. Further, defendant was adequately warned that he could receive up to 30 years' imprisonment, the sentencing range for the Class X attempted murder charge. See 730 ILCS 5/5-4.5-25(a) (West 2016) (Class X sentence range). The court then sentenced him to 10 years' imprisonment, a sentence far less than the maximum 30-year term. Even adding in the 4-year MSR term, defendant's 14-year sentence was not even half of the maximum prison term he had been warned of. There is no basis to conclude that defendant would not have proceeded to represent himself had he known he would receive one more year of MSR. See *Wright*, 2017 IL 119561, ¶ 56 (finding the defendant was not prejudiced by the trial court's understatement of the potential maximum sentence, where the defendant was eligible for a 75-year sentence, the trial court admonished him his maximum sentence was 60 years, and it sentenced him to 50 years).

¶ 32    For these reasons, the trial court's admonishments substantially complied with Rule 401(a). Because the trial court committed no error in giving Rule 401(a) admonishments, plain error analysis is unnecessary. See *People v. Herndon*, 2015 IL App (1st) 123375, ¶ 33 (declining to conduct plain error analysis where the trial court substantially complied with Rule 401(a)).

¶ 33    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 34    Affirmed.