2022 IL App (1st) 211095-U

SIXTH DIVISION
November 18, 2022

No. 1-21-1095

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 13 CR 13656 |
| | ) | |
| | ) | Honorable |
| VINCENT GEORGE, | ) | Thomas M. Davy and |
| | ) | Joan M. O'Brien, |
| Defendant-Appellant. | ) | Judges Presiding. |

PRESIDING JUSTICE MIKVA delivered the judgment of the court.
Justices Walker and Tailor concurred in the judgment.

**ORDER**

¶ 1    *Held*:    No clear or obvious error occurred where the trial court's admonishments regarding defendant's waiver of counsel at sentencing substantially complied with Illinois Supreme Court Rule 401(a) (eff. July 1, 1984).

¶ 2    Following a bench trial, the trial court found defendant Vincent George guilty of the aggravated discharge of a firearm and sentenced him to 10 years in prison. Mr. George appeared *pro se* at the sentencing hearing. Asserting that the trial court improperly admonished him under Illinois Supreme Court Rule 401(a)(2) (eff. July 1, 1984) when it misstated the percentage of the sentence he would serve if awarded good-conduct credit, Mr. George argues on appeal that he is

entitled to resentencing because he did not voluntarily, knowingly, and intelligently waive his right to counsel. For the reasons that follow, we affirm.

¶ 3                                I. BACKGROUND

¶ 4     The trial court found Mr. George guilty as charged of one count of aggravated discharge of a firearm for discharging a firearm at or into a building that he knew or reasonably should have known to be occupied from a place outside the building (720 ILCS 5/24-1.2(a)(1) (West 2012)). The trial court sentenced Mr. George to 10 years in prison. This is Mr. George's third appeal from his conviction, this court having dismissed his two prior appeals. *People v. George*, Nos. 1-16-2000 (2017) and 1-18-0033 (2019) (dispositional orders). Because Mr. George does not challenge the sufficiency of the evidence on appeal, we summarize only the trial testimony necessary to understand the circumstances of the offense for which he was sentenced. Mr. George was represented by counsel at trial.

¶ 5     At trial, Reginald King Argue testified that on the afternoon of July 7, 2013, Mr. George, whom Mr. Argue identified in court, attended a barbecue at Mr. Argue's home. Mr. Argue saw Mr. George with a small firearm that appeared to be "a .380 automatic of some kind." At some point, Mr. George hit Mr. Argue on the head, and Mr. Argue hit Mr. George on the head with a bottle. Mr. Argue told Mr. George "[he] didn't want any problems and just stop," and Mr. George left the barbecue. Later, Mr. Argue and his friend Edward Morris were inside Mr. Argue's home when they saw Mr. George walking toward the house. Neither saw Mr. George carrying a firearm as he walked.

¶ 6     Mr. Argue then heard something shatter and "several pops" that sounded like gunshots. Mr. Morris heard someone shout for Mr. Argue to come outside before he heard the gunshots, which he described as "one popping noise which sounded like a handgun" and then multiple

- 2 -

gunshots. After the gunfire stopped, there were bullet holes in the front portion of the house and a window of Mr. Morris's vehicle was shattered. Mr. Argue and Mr. Morris identified Mr. George, who was "down the block," to police as the person they believed fired the shots. Dixie Lee, who also attended the barbecue, testified that she observed Mr. George, whom she identified in court, "[come] out in the middle of the street and [start] shooting." According to her, Mr. George "let the whole clip out" and then walked to a nearby porch, where he was later arrested.

¶ 7 The trial court found Mr. George guilty of the aggravated discharge of a firearm. Mr. George, still represented by counsel, filed a motion for a new trial, which the trial court denied.

¶ 8 On September 11, 2015, Mr. George informed the court that he "want[ed] to invoke [his] rights" and "no longer wish[ed]" the public defender to represent him as counsel. He confirmed with the court that he wanted to represent himself "pursuant to Supreme Court Rule 401(a)" and requested the court to "render full admonishment." In response, the court entered a referral order requesting an evaluation of Mr. George for his fitness to represent himself.

¶ 9 At a subsequent court date on October 8, 2015, Mr. George reiterated that he had previously waived his right to counsel and indicated he was preparing a *pro se* motion raising a claim of ineffective assistance of trial counsel pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984).

¶ 10 On November 19, 2015, the trial court stated that, following an evaluation, Mr. George was found fit to represent himself. While in court, Mr. George tendered his *Krankel* motion, which was filed that day. The court confirmed with Mr. George that he wished to appear *pro se*, stated it would admonish him pursuant to Rule 401, and then admonished him as follows:

> "THE COURT: ***as far as the charge of aggravated discharge of a firearm, it is a
>
> Class 1 Felony, and the sentencing range for that is 4 to 15 years in the Illinois Department
>
> of Corrections.

It appears that because of your prior background, *** it would be a mandatory Class X sentencing range. So it would be charged as a Class 1, but the sentencing range would be that of a Class X.

Class X sentencing range is 6 to 30 years in the Illinois Department of Corrections. It is non-probationable. It is also followed by a three-year period of mandatory supervised release.

Do you understand that those are the sentencing ranges for the charge in the case that has already gone to trial?

[MR. GEORGE]: Yes, sir. I would like to ask is that case at 50 percent or at 85?

THE COURT: Let me just check.

***

[ASSISTANT STATE'S ATTORNEY]: *** The aggravated discharge as charged is 50 percent.

***

THE COURT: All right. It is a 50 percent sentence as far as the aggravated discharge. There was no bodily harm, great bodily harm which would cause it to be an 85 percent sentence.

So you understand that that's the sentencing range.

You also understand that *** you had been represented by an attorney at trial. You can continue to be represented by an attorney.

Do you understand that?

[MR. GEORGE]: Yes, sir.

THE COURT: You also understand that if you are proceeding on your own, that

would be without the benefit of an attorney *** [.]

Again, as I say, as far as the *Krankel* motion, that defendants do not necessarily have to be admonished about pursuant to Rule 401.

But you understand the sentencing ranges for the case that's already gone to trial. ***

As far as if at any point in the proceedings you wish to not represent yourself, you can certainly let me know that; and I will reappoint an attorney for you.

And you can obviously hire your own attorney. If you could not afford one, one would be appointed for you.

So do you understand that as well?

[MR. GEORGE]: Yes, sir.

THE COURT: *** Once again, just relating to Supreme Court Rule 401 as far as this particular case, *** the nature of the charge here was aggravated discharge with a firearm, *** you've heard from the testimony that it alleged that you had fired a gun into a building.

So you understand that that's what the nature of the charge is?

[MR. GEORGE]: Yes, sir."

The trial court then continued with its Rule 401(a) admonishments, admonishing Mr. George regarding proceeding *pro se* in two unrelated pending cases also before the court. It informed Mr. George that, if found guilty, all sentences would be served consecutively.

¶ 11    The trial court continued the cases for counsel to provide Mr. George with a copy of the transcripts and discovery. On January 8, 2016, the trial court discharged counsel for Mr. George, and Mr. George represented himself at all posttrial proceedings. Mr. George filed an amended

77-page *Krankel* motion combined with a supplemental motion for a new trial or, in the alterative, to set aside the verdict and enter a judgment of dismissal. The trial court held a *Krankel* hearing and denied Mr. George's motion. It then held a hearing on the motion for a new trial and denied that motion.

¶ 12   On May 24, 2016, the trial court held a sentencing hearing at which Mr. George appeared *pro se*. The State requested a sentence of more than 20 years in prison and informed the court that Mr. George must serve 85% of the imposed sentence. Mr. George expressed to the court that on a previous court date where he "first appear[ed] as a *pro se* defendant," the court stated that, because there was no bodily harm, he would serve 50% instead of 85% of the imposed sentence. The court responded that, under the statute, he must serve 85% of his sentence regardless of bodily harm. This was what was required by the statute on sentencing credit. See 730 ILCS 5/3-6-3 (a)(2)(iv) (West Supp. 2015) ("a prisoner serving a sentence for aggravated discharge of a firearm, whether or not the conduct leading to conviction for the offense resulted in great bodily harm to the victim, shall receive no more than 4.5 days of sentence credit for each month of his or her sentence of imprisonment").

¶ 13   The court sentenced Mr. George to 10 years in prison, to be served consecutive to the 6-year prison sentence imposed in one of his unrelated cases. Mr. George informed the court that he wished to file a motion to reconsider his sentence. The court entered and continued leave to file the motion to reconsider and extended the filing date past the statutory 30 days.

¶ 14   Mr. George timely filed a *pro se* notice of appeal (appeal number 1-16-2000) and, a few weeks later, a timely *pro se* motion to reconsider his sentence. The trial court found it lost jurisdiction to decide the motion once the notice of appeal was filed. This court, pursuant to the parties' agreed motion, dismissed Mr. George's appeal and remanded the case for the trial court to

rule on the substantive merit of Mr. George's motion to reconsider his sentence. *George*, No. 1-16-2000 (2017) (dispositional order). On remand in 2017, the trial court stated that there were no motions pending and Mr. George filed another *pro se* notice of appeal (appeal number 1-18-0033), stating the trial court denied the motion to reconsider. This court, pursuant to the parties' agreed motion for summary disposition, dismissed Mr. George's appeal and remanded for the trial court to rule on Mr. George's still-pending motion to reconsider sentence. *George*, No. 1-18-0033 (2019) (dispositional order).

¶ 15    On remand, counsel appointed to represent Mr. George adopted his July 1, 2016, *pro se* motion to reconsider his sentence. The trial court considered and denied Mr. George's motion. This appeal followed.

¶ 16                                    II. JURISDICTION

¶ 17    After Mr. George's unsuccessful attempts to get the trial court to reconsider his sentence described above, the court finally considered and denied the motion on June 28, 2021. Mr. George timely filed his notice of appeal on July 1, 2021. We have jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rules 603 (eff. Feb. 6, 2013) and 606 (eff. March 12, 2021), governing appeals from final judgments of conviction in criminal cases.

¶ 18                                    III. ANALYSIS

¶ 19    On appeal, Mr. George argues that his waiver of the right to counsel at sentencing was not effective because the trial court did not substantially comply with the admonishments set forth in Rule 401(a)(2) when it erroneously stated that his sentence would be served at 50% rather than 85%.

¶ 20    Mr. George concedes that the issue is forfeited as he neither objected to the admonishment

during any hearing nor raised the alleged error in a posttrial motion. *People v. Herndon*, 2015 IL App (1st) 123375, ¶ 24. He requests review under the plain-error doctrine.

¶ 21 Under the plain-error doctrine, a reviewing court may consider forfeited errors under two alternative prongs:

> "(1) when a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) when a clear or obvious error occurred and the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Moon*, 2022 IL 125959, ¶ 20.

¶ 22 Mr. George argues second-prong plain error. However, to prevail under either prong, he first bears the burden of proving that a clear or obvious error occurred. *People v. Mudd*, 2022 IL 126830, ¶ 22. We find no error here.

¶ 23 The sixth amendment to the United States Constitution guarantees a defendant the right to counsel in a criminal proceeding. U.S. Const., amend. VI. It is well-established that a defendant may waive this right and choose to proceed *pro se*. *People v. Perkins*, 2018 IL App (1st) 133981, ¶ 41. But before proceeding *pro se*, a defendant must first voluntarily, knowingly, and intelligently waive his right to counsel. *People v. Haynes*, 174 Ill. 2d 204, 235 (1996). A defendant's "waiver of counsel must be clear and unequivocal, not ambiguous." *People v. Baez*, 241 Ill. 2d 44, 116 (2011).

¶ 24 Rule 401(a) governs the waiver of counsel and provides that a court shall not permit a defendant to waive counsel for an offense punishable by imprisonment without first admonishing the defendant in open court and establishing that he understands the following:

"(1) the nature of the charge;

(2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and

(3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court." Ill. S. Ct. R.401(a) (eff. July 1, 1984).

The purpose of Rule 401(a) is to ensure that a defendant's waiver of counsel is voluntarily and knowingly made. *People v. Moore*, 2014 IL App (1st) 112592-B, ¶ 38. Without proper admonishments, there can be no effective waiver of counsel. *People v. Langley*, 226 Ill. App. 3d 742, 749 (1992). "Strict, technical compliance with Rule 401(a), however, is not always required." *Haynes*, 174 Ill. 2d at 236.

¶ 25    Substantial compliance is sufficient to effectuate a valid waiver of counsel "if the record indicates that the waiver was made knowingly and voluntarily, and the admonishment the defendant received did not prejudice his rights." *Id.* A court substantially complies with the rule when there are imperfect admonishments that do not prejudice a defendant because either (1) the absence of detail from the admonishments did not hinder the defendant from knowingly and intelligently waiving counsel or (2) the defendant's degree of knowledge or sophistication excused the omission. *People v. Pike*, 2016 IL App (1st) 122626, ¶ 112. Whether a defendant's waiver of counsel was done intelligently depends on the particular facts and circumstances of the case. *Baez*, 241 Ill. 2d at 116. This court reviews *de novo* whether the trial court's admonishments substantially complied with Rule 401(a). *People v. Khan*, 2021 IL App (1st) 190051, ¶ 46.

¶ 26    In this case, the record shows that the trial court substantially complied with Rule 401(a) before Mr. George proceeded *pro se* at sentencing. On November 19, 2015, the court admonished

Mr. George of the nature of the charges against him, stating he was charged with the aggravated discharge of a firearm for discharging a firearm into a building. Mr. George confirmed that he understood this. The court also admonished Mr. George of the minimum and maximum sentence, stating that, due to his criminal background, he would be subject to mandatory Class X felony sentencing, which carried a sentencing range of 6 to 30 years in prison followed by 3 years of mandatory supervised release. This was all in accordance with the applicable statutes. See 730 ILCS 5/5-4.5-95(b) (West 2016) (providing that a defendant over the age of 21 shall be sentenced as a Class X felony offender when the defendant is convicted of a Class 1 or 2 forcible felony after having been convicted twice of a Class 2 or greater class forcible felony); see also 730 ILCS 5/5-4.5-25(a) (West 2016) (providing that a Class X felony offender is subject to a term of 6 to 30 years in prison). Mr. George was also told that his sentence would run consecutive to that imposed on the conviction he had received in an unrelated case. Mr. George stated that he understood.

¶ 27    The court further admonished Mr. George of his right to counsel, stating counsel could continue to represent him and, if at any point he no longer wished to represent himself, he could hire his own attorney or, if he could not afford one, the court would reappoint an attorney to represent him. Mr. George again confirmed that he understood. We find the trial court properly admonished Mr. George as required by Rule 401(a) where it established Mr. George understood the nature of the charge, the minimum and maximum sentence, and his right to counsel, including the right to appointed counsel if he was indigent.

¶ 28    Mr. George's argument is that the trial court provided inadequate admonishments regarding the minimum and maximum sentence under Rule 401(a)(2) because it misstated the percentage of the sentence that he would be required to serve, indicating that, with good-conduct credit, his sentence would be served at 50% rather than at the correct 85%.

¶ 29   In our view, Mr. George's argument must be rejected for two reasons. First, a trial court substantially complies with the Rule 401(a) admonishments even where the admonishments contain an error as long as that error did not preclude the defendant from making a knowing and voluntary waiver or prejudice them. Second, good-conduct credit is not a part of the sentence itself and thus is not a part of the Rule 401(a) admonishments.

¶ 30   Our supreme court dealt with an error in the trial court's Rule 401(a) admonishments in *People v. Wright*, 2017 IL 119561. The court noted there:

"We have recognized for 30 years that [s]trict technical compliance with Rule 401(a), *** is not always required. Rather, substantial compliance will be sufficient to effectuate a valid waiver if the record indicates that the waiver was made knowingly and voluntarily, and the admonishment the defendant received did not prejudice his rights." (Internal quotation marks omitted.) *Id.* ¶ 41.

¶ 31   Our supreme court held in *Wright* that the defendant's waiver of counsel was valid despite the fact that the trial court had given him incorrect information on the maximum sentence he could receive. *Id.* ¶ 52. It concluded that "the trial court substantially complied with Rule 401(a) when it properly admonished [the] defendant in all respects except when it informed him that he faced a maximum sentence of 60 years in prison, when it was actually 75 years." *Id.* The court concluded that there was "no basis" to conclude that the defendant was prejudiced or that he would not have represented himself if he had known the actual maximum sentence. *Id.* ¶ 56.

¶ 32   Mr. George seeks to distinguish *Wright* on the basis that in this case he specifically asked about the amount of good-conduct credit while there was no question from the defendant in *Wright* about the maximum sentence in that case. This is correct, but the import of the supreme court's

decision in *Wright* is that the admonishments need not be perfect, and the defendant must show some way in which he was prejudiced by some error in the admonishment.

¶ 33    In this case, Mr. George offers no argument as to how he was prejudiced or how his waiver was impacted by the incorrect information on good-conduct credit. Nor can we imagine what the prejudice would be. Mr. George stated he understood he was subject to sentencing as a Class X felony offender due to his background, which made him eligible for 6 to 30 years in prison, and the imposed sentence would be served consecutive to the 6-year sentence he received for his unrelated conviction. Mr. George chose to proceed *pro se* knowing this and having been fully and repeatedly advised that he had a right to counsel. Mr. George received a 10-year sentence, which was above the minimum and below the maximum of which he was advised.

¶ 34    This case is actually less compelling than *Wright* because the error that was made in this case concerned information that was not even a part of the required admonishments under Rule 401. The court is required to admonish a defendant as to "the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences." Good-conduct credit is not part of these admonishments.

¶ 35    The good-conduct credit statute "governs only the *potential* credit that a defendant may receive for good conduct." (Emphasis in original.) *People v. Davis*, 405 Ill. App. 3d 585, 603 (2010). Because the award of such credit is contingent on the defendant's behavior while in prison, it "is not something that is definite, immediate, and largely automatic in its effect upon a defendant's punishment." *People v. Frison*, 365 Ill. App. 3d 932, 935 (2006). The trial court does not control the manner in which a prisoner earns good-conduct credit or the amount, if any, that will be applied to his sentence. *People v. Castano*, 392 Ill. App. 3d 956, 960 (2009).

¶ 36 Even in the context of guilty pleas, we have recognized that good-conduct credit is something separate and apart from the sentence itself and is not something that the defendant must be advised about. In *Frison*, 365 Ill. App. 3d 932, the Second District considered a claim that the court violated Supreme Court Rule 402(a)(2) (eff. July 1, 2012), which requires that the trial court provide the same admonishment regarding the minimum and maximum sentence prior to accepting a defendant's guilty plea that is required under Rule 401(a)(2) for an effective waiver of counsel. As the court explained in *Frison*, although good-conduct credit may affect the sentence a defendant ultimately serves, it does not affect the sentence imposed by the trial court. *Id.* at 934. An award of good-conduct credit is contingent on a defendant's behavior while incarcerated, and eligibility for the credit is determined by the Illinois Department of Corrections, not the court. *Id.* at 935. Thus, the court in *Frison* concluded there was no violation of Rule 402(a)(2) and no claim for ineffective assistance of counsel for the failure to inform the defendant of the amount of good-conduct credit he would receive. See *Castano*, 392 Ill. App. 3d at 960 (following *Frison*, in the context of Rule 402(a)(2)).

¶ 37 In short, all that is required to effectuate a valid waiver of counsel is substantial compliance with Rule 401(a). A trial court may make an error and still be in substantial compliance. Moreover, a defendant must show some prejudice resulting from that error. In addition, good-conduct credit is not a part of the sentence itself, and therefore is not a part of the necessary Rule 401(a) admonishments. Because this record does not reflect a clear error, plain error analysis is unnecessary. See *Herndon*, 2015 IL App (1st) 123375, ¶ 33 (finding plain error analysis was not warranted where the trial court's admonishment substantially complied with Rule 401(a)).

¶ 38                                   IV. CONCLUSION

¶ 39 For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 40    Affirmed.